IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

**NORTHLAND PARENT ASSOCIATION,**   )
 a Missouri nonprofit corporation        )
                                    )
               Plaintiff,     )      Case No. _____
                                      )
v.                                  )
                                    )
**Excelsior Springs School District #40**  )
300 West Broadway Street           )
Excelsior Springs, MO 64024        )
                                    )
**Board of Education of Excelsior Spring** )
  **School District # 40**          )
300 West Broadway Street           )
Excelsior Springs, MO 64024        )
                                    )
**Kearney R-I School District**      )
150 West State Route 92            )
Kearney, MO 64060              )
                                    )
**Board of Education of Kearney R-I**   )
  **School District**            )
150 West State Route 92            )
Kearney, MO 64060              )
                                    )
**Liberty 53 School District**       )
8 Victory Lane                 )
Liberty, MO 64068              )
                                    )
**Board of Education of Liberty 53 School District** )
8 Victory Lane                 )
Liberty, MO 64068              )
                                    )
**North Kansas City School District #74**  )
2000 NE 46th Street              )
Kansas City, MO 64116          )
                                    )
**Board of Education of North Kansas City** )
  **School District #74**         )
2000 NE 46th Street               )
Kansas City, MO 64116          )

**Smithville R-II School District**                )
655 S Commercial Avenue                           )
Smithville, MO 64089                              )
                                                  )
**Board of Education of Smithville R-II**         )
  **School District**                    )
655 S Commercial Avenue                           )
Smithville, MO 64089                              )
                                                  )
**Park Hill School District**                     )
7703 NW Barry Road                                )
Kansas City, MO 64153                             )
                                                  )
**Board of Education of Park Hill School District** )
7703 NW Barry Road                                )
Kansas City, MO 64153                             )
                                                  )
**Platte County School District R-III**           )
998 Platte Falls Road                             )
Platte City, MO 64079                             )
                                                  )
**Board of Education of Platte County**           )
  **School District R-III**              )
998 Platte Falls Road                             )
Platte City, MO 64079                             )
                                                  )
**Quinton Lucas, Mayor of Kansas City,**          )
  **Missouri, in his Official Capacity** )
414 E 12th Street                                 )
Kansas City, MO 64106                             )
                                                  )
**City Council of Kansas City, Missouri**         )
414 E 12th Street                                 )
Kansas City, MO 64106                             )
                                                  )
**Bryant DeLong, Mayor of North Kansas**          )
  **City, Missouri, in his Official Capacity** )
2010 Howell Street                                )
North Kansas City, MO 64116                       )
                                                  )
**City Council of North Kansas City, Missouri**   )
2010 Howell Street                                )
North Kansas City, MO 64116                       )
                                                  )
    Defendants.                )

# COMPLAINT

NORTHLAND PARENT ASSOCIATION, by and through counsel, for its claims for relief against Defendants, alleges and states as follows:

## PARTIES

1.      Plaintiff, the **Northland Parent Association ("NPA")**, is a Missouri nonprofit corporation with its principal place of nonprofit business in Clay County, Missouri.

2.      The NPA is made up of hundreds of parents, guardians, families, and taxpayers in Clay County, Missouri, and Platte County, Missouri, who inform themselves, educate the public, and advocate for the health and social, emotional, and academic wellbeing of students in the Northland area of the metropolitan area of Kansas City.

3.      Defendant **Excelsior Springs School District #40 ("ESSD")** is a public school district located in Clay County, Missouri, and a political subdivision of the State of Missouri. ESSD is responsible for providing a free public education to the residents of the district. ESSD is governed by a seven-director school board.

4.      Defendant **Board of Education of ESSD ("ESSD School Board")** is a representative body elected by the registered voters of the ESSD. The purpose and role of the ESSD School Board is to "exercise general supervision over the schools of the district, and to ensure that the schools are maintained as provided by the state statutes, [state] rules and procedures . . . , and the policies, rules and procedures of the school district." ESSD, Policy BBA: School Board Powers & Duties (adopted 10/12/1998). The ESSD School Board "is accountable to the electorate, and shall be responsive to the educational needs and the imposed financial constraints of the district." *Id*. The ESSD School Board, acting as a whole, "controls all aspects of the operations of the district within the limits of the law" and is "the final authority" for the ESSD. *Id*.

5.     The members of the ESSD School Board are Tray Harkins, Darren McKown, Rick Strack, Travis Hux, Kenny Manley, Steve Houck, Kalyn Goode, and Troy Snelling. They are sued collectively as a Board in their official capacity.

6.      The NPA has one or more members whose children are currently enrolled in the early childhood program in ESSD.

7.     The NPA has one or more members whose children are currently enrolled in an elementary school in ESSD.

8.     The NPA has one or more members whose children are currently enrolled in middle school in ESSD.

9.     The NPA has one or more members whose children are currently enrolled in high school in ESSD.

10.     Defendant **Kearney R-1 School District** ("**KSD**") is a public school district located in Clay County, Missouri, and a political subdivision of the State of Missouri. KSD is responsible for providing a free public education to the residents of the district. KSD is governed by a seven-director school board.

11.     Defendant **Board of Education of KSD ("KSD School Board")** is a representative body elected by the registered voters of the KSD district. The purpose and role of the KSD School Board is to "exercise general supervision over the schools of the district, and to ensure that the schools are maintained as provided by the state statutes, [state] rules and procedures . . . , and the policies, rules and procedures of the school district." KSD, Policy BBA: School Board Powers & Duties (adopted 11/15/2001). The KSD School Board "is accountable to the electorate, and shall be responsive to the educational needs and the imposed financial constraints of the district." *Id.*

The KSD School Board, acting as a whole, "controls all aspects of the operations of the district within the limits of the law" and is "the final authority" for the KSD. *Id.*

12.     The members of the KSD School Board are Mark Kelly, Bree Switzer, Darlene Bailey, Brian Hamm, Dan Holloway, John Kern, and Susan Woehrman. They are sued collectively as a Board in their official capacity.

13.     The NPA has one or more members whose children are currently enrolled in the early childhood program in KSD.

14.     The NPA has one or more members whose children are currently enrolled in an elementary school in KSD.

15.     The NPA has one or more members whose children are currently enrolled in a middle school in KSD.

16.     The NPA has one or more members whose children are currently enrolled in a high school in KSD.

17.     Defendant **Liberty 53 School District** (commonly and hereinafter referred to as **Liberty Public Schools ("LPS")**) is a public school district located in Clay County, Missouri, and a political subdivision of the State of Missouri. LPS is responsible for providing a free public education to the residents within the district. LPS is governed by a seven-director school board.

18.     Defendant **Board of Education of LPS ("LPS School Board")** is a representative body elected by the registered voters of the LPS district. The purpose and role of the LPS School Board is to "exercise general supervision over the schools of the district, and to ensure that the schools are maintained as provided by the state statutes, [state] rules and procedures . . . , and the policies, rules and procedures of the school district." LPS, Policy BBA: School Board Powers & Duties (revised 01/22/2013). The LPS School Board "is accountable to the electorate, and shall be

responsive to the educational needs and the imposed financial constraints of the district." *Id*. The LPS School Board, acting as a whole, "controls all aspects of the operations of the district within the limits of the law" and is "the final authority" for LPS. *Id*.

19.     The members of the LPS School Board are Nicholaus Bartlow, Angie Reed, AJ Byrd, Scott Connor, Kim-Marie Graham, Drew Marriott, and Andrew Roffmann. They are sued collectively as a board in their official capacity.

20.     The NPA has one or more members whose children are currently enrolled in the early childhood program in LPS.

21.     The NPA has one or more members whose children are currently enrolled in an elementary school in LPS.

22.     The NPA has one or more members whose children are currently enrolled in a middle school in LPS.

23.     The NPA has one or more members whose children are currently enrolled in a high school in LPS.

24.     Defendant **North Kansas City School District #74** (commonly and hereinafter referred to as **"NKC Schools")** is a public school district located in Clay County and Platte County, Missouri, and is a political subdivision of the State of Missouri. NKC Schools is responsible for providing a free public education to the residents within the district. NKC Schools is governed by a seven-director school board.

25.     Defendant **Board of Education of NKC Schools ("NKC School Board")** is a representative body elected by the registered voters of the NKC Schools district. The purpose and role of the NKC School Board is to "exercise general supervision over the schools of the district, and to ensure that the schools are maintained as provided by the state statutes, [state] rules and

procedures . . . , and the policies, rules and procedures of the school district." NKC Schools, Policy BBA: School Board Powers & Duties (adopted 02/11/2003). The NKC School Board "is accountable to the electorate, and shall be responsive to the educational needs and the imposed financial constraints of the district." *Id*. The NKC School Board, acting as a whole, "controls all aspects of the operations of the district within the limits of the law" and is "the final authority" for NKC Schools. *Id*.

26.     The members of the NKC School Board are Jan Kauk, Terry Stone, Jane Rinehart, Judy Wartick, Paul Harrell, Karee Gleason-Miller, and Terry Ward. They are sued collectively as a board in their official capacity.

27.     The NPA has one or more members whose children are currently enrolled in the early childhood program in NKC Schools.

28.     The NPA has one or more members whose children are currently enrolled in an elementary school in NKC Schools.

29.     The NPA has one or more members whose children are currently enrolled in a middle school in NKC Schools.

30.     The NPA has one or more members whose children are currently enrolled in a high school in NKC Schools.

31.     Defendant **Park Hill School District ("PHSD")** is a public school district located in Platte County, Missouri, and a political subdivision of the State of Missouri. PHSD is responsible for providing a free public education to the residents of the district. PHSD is governed by a seven-director school board.

32.     Defendant **Board of Education of PHSD ("PHSD School Board")** is a representative body elected by the registered voters of PHSD. The purpose and role of the PHSD

School Board is to "exercise general supervision over the schools of the district, and to ensure that the schools are maintained as provided by the state statutes, [state] rules and procedures . . . , and the policies, rules and procedures of the school district." PHSD, Policy BBA: School Board Powers & Duties (adopted 2/14/2013). The PHSD School Board "is accountable to the electorate, and shall be responsive to the educational needs and the imposed financial constraints of the district." *Id.* The PHSD School Board, acting as a whole, "controls all aspects of the operations of the district within the limits of the law" and is "the final authority" for the PHSD. *Id.*

33. The members of the PHSD School Board are Janice Bolin, Bart Klein, Kimberlee Ried, Scott Monsees, Brandy Woodley, Todd Fane, and Susan Newburger. They are sued collectively as a Board in their official capacity.

34. The NPA has one or more members whose children are currently enrolled in the early childhood program in PHSD.

35. The NPA has one or more members whose children are currently enrolled in an elementary school in PHSD.

36. The NPA has one or more members whose children are currently enrolled in middle school in PHSD.

37. The NPA has one or more members whose children are currently enrolled in high school in PHSD.

38. Defendant **Platte County School District R-III ("PCSD")** is a public school district located in Platte County and Clay County, Missouri, and it is a political subdivision of the State of Missouri. PCSD is responsible for providing a free public education to the residents of the district. PCSD is governed by a seven-director school board.

39.     Defendant **Board of Education of PCSD ("PCSD School Board")** is a representative body elected by the registered voters of the PCSD. The purpose and role of the PCSD School Board is to "exercise general supervision over the schools of the district, and to ensure that the schools are maintained as provided by the state statutes, [state] rules and procedures . . . , and the policies, rules and procedures of the school district." PCSD, Policy BBA: School Board Powers & Duties (adopted 12/16/1999). The PCSD School Board "is accountable to the electorate, and shall be responsive to the educational needs and the imposed financial constraints of the district." *Id.* The PCSD School Board, acting as a whole, "controls all aspects of the operations of the district within the limits of the law" and is "the final authority" for the PCSD. *Id.*

40.     The members of the PCSD School Board are Buffy Smith, Gary Brown, Sharon Sherwood, Doug Doll, Alisha Elliott, Bobby Vann, and Karen Bryant. They are sued in their official capacity.

41.     The NPA has one or more members whose children are currently enrolled in the early childhood program in PCSD.

42.     The NPA has one or more members whose children are currently enrolled in an elementary school in PCSD.

43.     The NPA has one or more members whose children are currently enrolled in middle school in PCSD.

44.     The NPA has one or more members whose children are currently enrolled in high school in PCSD.

45.     Defendant **Smithville R-II School District ("SSD")** is a public school district located in Missouri in the counties of Clay, Clinton, and Platte, and is a political subdivision of the

State of Missouri. SSD is responsible for providing a free public education to the residents within the district. SSD is governed by a seven-director school board.

46.     Defendant **Board of Education of SSD ("SSD School Board")** is a representative body elected by the registered voters of in the SSD. The purpose and role of the SSD School Board is to "exercise general supervision over the schools of the district, and to ensure that the schools are maintained as provided by the state statutes, [state] rules and procedures . . . , and the policies, rules and procedures of the school district." SSD, Policy BBA: School Board Powers & Duties (adopted 04/21/2010). The SSD School Board "is accountable to the electorate, and shall be responsive to the educational needs and the imposed financial constraints of the district." *Id*. The SSD School Board, acting as a whole, "controls all aspects of the operations of the district within the limits of the law" and is "the final authority" for SSD. *Id*.

47.     The members of the SSD School Board are Denney Fales, Sarah Lamer, Jeff Bloemker, Ian Saxton, Len Matthies, Scott Haggerty, and Susan Whitacre. They are sued collectively as a board in their official capacity.

48.     The NPA has one or more members whose children are currently enrolled in the early childhood program in SSD.

49.     The NPA has one or more members whose children are currently enrolled in an elementary school in SSD.

50.     The NPA has one or more members whose children are currently enrolled in a middle school in SSD.

51.     The NPA has one or more members whose children are currently enrolled in a high school in SSD.

52.     The above listed School District and School Board Defendants are hereinafter collectively referred to as "**School Defendants**."

53.     Defendant **Quinton Lucas** is the Mayor of Kansas City. He is sued in his official capacity.

54.     Defendant **City Council of Kansas City, Missouri,** is Kansas City's legislative and policy-making body comprised of thirteen councilmembers: Quinton Lucas, Heather Hall, Kevin O'Neill, Dan Fowler, Teresa Loar, Melissa Robinson, Brandon Ellington, Katheryn Shields, Eric Bunch, Lee Barnes, Jr., Ryana Parks-Shaw, Kevin McManus, and Andrea Bough. They are sued collectively as a government body in their official capacity.

55.     Defendant **Bryant DeLong** is the Mayor of North Kansas City, Missouri. He is sued in his official capacity.

56.     Defendant **City Council of North Kansas City, Missouri,** is North Kansas City's legislative and policy-making body comprised of eight councilmembers: Anthony Saper, Wesley Graves, Lisa Tull, Jesse Smith, Zachary Clevenger, Adam Roberts, Amie Clarke, and Ana Pellumbi. They are sued collectively as a government body in their official capacity.

57.     The above listed city officials and departments hereinafter collectively referred to as "**City Defendants**."

## JURSIDICTION AND VENUE

58.     This Court has original subject matter jurisdiction over the federal Constitutional violations alleged in this Complaint pursuant to the provisions of 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331 and 1343. Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Plaintiff's state law claims. This Court has jurisdiction to issue injunctive and declaratory relief pursuant to 28 U.S.C. § 2201 and 42 U.S.C. § 1983.

59.     Venue is proper in this Court under 28 U.S.C. § 1391. All Defendants reside in the Western District of Missouri, and a substantial part of the events or omissions giving rise to the claims occurred in the Western District of Missouri.

**FACTUAL BACKGROUND**

60.     Plaintiff hereby incorporates paragraphs 1-60 of this Complaint if fully set forth herein.

61.     Upon information and belief, on or around August 27, 2021, Missouri Governor Mike Parson terminated Executive Order 20-02 ending the State of Emergency that has been in effect since March 13, 2020, stating that the situation no longer demands an expansive emergency declaration as there is now a solution to ending the pandemic with the vaccine. Governor Parson then ordered with a more targeted State of Emergency declaration that acknowledges the continued needs of Missouri's health care system. Press Release, Mike Parson, Governor, Missouri, Governor Parson Ends Existing State of Emergency by Terminating Executive Order 20-02 (Aug. 27, 2021), *available at* https://governor.mo.gov/press-releases/archive/governor-parson-ends-existing-state-emergency-terminating-executive-order-20 (last visited Aug. 28, 2021).

I.     **COVID-19, Risks to Children, & Masks**

62.     COVID-19 is a respiratory illness caused by a coronavirus that, among other symptoms, can cause cough, shortness of breath, fever or chills, muscle and body aches, vomiting or diarrhea, and the temporary loss of taste or smell.

        a.     **Low risk of death to children from COVID-19.**

63.     The death of any child is a tragedy.

64.     To date, no child younger than 10 years old in Missouri has died from COVID-19.[1]

---

[1] Unless otherwise noted, the Complaint cites statewide statistics reported on the Missouri Department of Health & Senior

65. Out of more than 10,200 reported deaths involving COVID-19 in Missouri, only five– 0.05% are from children between the ages of 10 and 17.

66. By contrast, in 2019, Missouri reported four fatalities of children under age 15 from chronic lower respiratory disease; ten deaths of children under age 15 due to influenza and pneumonia; 11 deaths of children under age 15 from cancers; and 49 children under age 15 died in motor vehicle crashes. DHHS, Table 21A, Resident Deaths by Selected Causes by Age Groups: Missouri, 2019, available at https://health.mo.gov/data/vitalstatistics/mvs19/Table21a.pdf.

67. Missouri's experience is consistent with nationwide data. The CDC reports 385 deaths nationally in children under 18 years old from COVID-19 out of more than 54,000 deaths from all causes in that age bracket. CDC, Deaths involving coronavirus disease 2019 (COVID-19), pneumonia, and influenza reported to NCHS by time-period, jurisdiction of occurrence, sex and age-group, Aug. 18, 2021, available at https://www.cdc.gov/nchs/nvss/vsrr/covid_weekly/index.htm (last visited Aug. 25, 2021); *see also*, Marty Makary, Opinion, *The Flimsy Evidence Behind the CDC's Push to Vaccinate Children,* WALL ST. J. (July 19, 2021), https://on.wsj.com/2VYqit1 (In the United States, less than 350 children "under 18 have died with a Covid diagnosis code in their record.").

68. By contrast, during that same time period, the CDC reports 1,381 deaths of children under 18 years old involving pneumonia, influenza, or COVID-19, meaning that approximately 1,075 deaths of children under 18 years old involved pneumonia or influenza, but not COVID-19. CDC, Deaths involving coronavirus disease 2019 (COVID- 19), pneumonia, and influenza reported to NCHS by time-period, jurisdiction of occurrence, sex and age-group, Aug. 18, 2021,

---

Services COVID-19 dashboard, available at https://health.mo.gov/living/healthcondiseases/communicable/novel-coronavirus/data/ public-health/statewide.php.

available at https://www.cdc.gov/nchs/nvss/vsrr/covid_weekly/index.htm (last visited Aug. 25, 2021).

69.     The CDC's current best estimate scenario assesses the infection fatality rate to be 0% for 0-17 year olds and to be 0.05% for 18-49 year olds (and, given that COVID-19 risk is more serious as individuals age, 0.05% is likely far too high for 18- and 19-year-olds). CDC, COVID-19 Pandemic Planning Scenarios (last updated Mar. 19, 2021), https://bit.ly/3AyuiiU.

70.     Data from the United Kingdom regarding fatality rates from the delta variant show the case fatality rate from delta is lower than other variants, and it is near 0.0% for those under fifty years old. *See* PUB. HEALTH ENG., SARS-COV-2 VARIANTS OF CONCERN AND VARIANTS UNDER INVESTIGATION IN ENGLAND: TECHNICAL BRIEFING 20, at 14 tbl.4 (Aug. 6, 2021); *see id.* at 18 tbl.5 (showing that only 48 of the 147,612 unvaccinated people under 50 who were infected with the Delta variant died (0.03%)).

**b.  Low risk of children's hospitalization due to COVID-19.**

71.     COVID-19 "infection in children is generally characterized by mild illness. Only a minority of children require hospitalization …" Zoe Hyde, Perspective, COVID-19, *Children and Schools: Overlooked and at Risk,* 213 MED. J. AUSTL. 444, 444 (2020); *see Children, School and COVID-19,* NAT'L INST. PUB. HEALTH & ENV'T (last updated July 14, 2021), https://www.rivm.nl/en/coronavirus-covid-19/children-and-covid-19 ("Worldwide, relatively few children have been reported with COVID-19. . . . Children become less seriously ill and almost never need to be hospitalized because of" COVID- 19.).

72.     Children make up a small percentage of COVID-related hospitalizations and make up less than 1 for every 100,000 residents in Missouri. COVID Data Tracker, CDC, *New Admissions of Patients with Confirmed COVID-19 per 100,000 Population by Age Group,*

*Missouri* (last visited Aug. 24, 2021), https://covid.cdc.gov/covid-data-tracker/#new-hospital-admissions.

73.    As of July 31, 2021, the CDC reported that the rate of hospitalization with COVID for children between 5 and 17 was 0.5 per 100,000, or about 250 patients. Marty Makary & H. Cody Meissner, Opinion, *The Case Against Masks for Children,* WALL ST. J. (Aug. 8, 2021), https://on.wsj.com/3ANwOlt. Those numbers overestimate the risk because all children admitted to the hospital are tested whether they complained of COVID or some other affliction.

74.    The CDC estimates that compared to adults 40 to 49 years of age, children 5 to 17 years of age have 160 times lower risk of death from COVID-19 and 27 times lower risk of hospitalization from COVID-19." Dena Bravata, *Back to School: The Effect of School Visits During COVID-19 on COVID-19 Transmission 9* (Nat'l Bureau of Econ. Research, Working Paper No. 28645, Apr. 2021).

75.    Sweden, which kept schools open last year, reported a total of 15 children with Covid-19 were admitted to an ICU (0.77 per 100,000 children in this age group)" between March and June 2020. Jonas F. Ludvigsson, Letter to the Editor, *Open Schools, Covid-19, and Child and Teacher Morbidity in Sweden,* 384 NEW. ENG. J. MED. 669, 669 (2021).

76.    All these studies and data show that children are a small proportion of COVID-19 infections and are at substantially less risk for severe health outcomes than adults.

**c.   Low risk of children spreading COVID-19.**

77.    Research and data from the last 18 months overwhelmingly show that the risk of children spreading the coronavirus is minimal.

78.    An article published in the New England Journal of Medicine studied and confirmed the direction of the virus's spread from contact to contact. By studying results from

Iceland's systematic screening process, the author determined that if children do get the virus, they are less likely to transmit the disease to adults and found that there was not a single instance of a child infecting parents. Daniel F. Gudbjartsson, Ph.D, Agnar Helgason, Ph.D., et al., *Spread of SARS-CoV-2 in the Icelandic Population,* N. Eng. J. Med. (June 11, 2020), https://www.nejm.org/doi/full/10.1056/NEJMoa2006100.

79.     A French study from April 2020, when there were no vaccines, showed that three schoolchildren who had positive test results became positive from a source other than the school. Arnaud Fontanet, MD, DrPH, Rebecca Grant, et al., SARS-CoV-2 Infection in Primary Schools in Northern France: A Retrospective Cohort Study in an Area of High Transmission, Institut Pasteur, (last visited August 25, 2020), https://www.pasteur.fr/fr/file/35404/download.

80.     Out of Ireland, researchers followed three children (between ages 10 and 15) and three adults who tested positive in March 2020. After being confined to their homes due to a lockdown, the children had 722 contacts with other people, but the researchers found no instance of a child infecting another child. The adults had fewer contacts (102) and passed it on to other adults. Laura Heavey, Geraldine Casey, et al., *No Evidence of Secondary Transmission of COVID-19 from Children Attending School in Ireland, 2020,* Eurosurveillance, (May 28, 2020), https://www.eurosurveillance.org/content/10.2807/1560-7917.ES.2020.25.21.2000903#html_ fulltext.

81.     A Netherland study confirmed that (1) children play a minor role in the spread of the novel coronavirus, (2) the virus is mainly spread between adults and from adult family members to children, and (3) the spread of COVID-19 among children or from children to adults is less common. *Children and COVID-19,* National Institute for Public Health and the

Environment, (July 2, 2020), https://www.rivm.nl/en/novel-coronavirus- covid-19/children-and-covid-19.

82.     Similarly, a German study from March 2020 to early May 2020 followed 128 pediatric patients admitted to hospitals. For that limited sample size, the researchers found that the primary source of infection with SARS-CoV-2 appears not to be other children. Armann, J. P., et al., *Hospital Admission in Children and Adolescents With COVID-19. Deutsches Arzteblatt international,* 117(21), 373–374 (2020).

83.     In a large study from the United Kingdom studying school environments, the author confirmed that there is very little evidence that the virus is transmitted in schools. Sian Griffiths, *Pupils pose little risk of spreading COVID,* THE SUNDAY TIMES (Aug. 9, 2020), https://bit.ly/3y9WqYb.

84.     Research studying the effect of school closures on disease spread finds little or no effect of school closure on disease spread. When Sweden kept its schools open, a study found that there was no additional risk to the elderly (a high-risk population) cohabitating with schoolchildren even if children became infected. Brandén, Maria, et al., *Residential Context and COVID-19 Mortality among the Elderly in Stockholm: A population-based, observational study. Stockholm Research Reports in Demography,* THE LANCET (Oct. 27, 2020) https://www.thelancet.com/journals/lanhl/article/PIIS2666-7568(20)30016-7/fulltext; *Covid-19 in schoolchildren: A comparison between Finland and Sweden,* Public Health Agency of Sweden (2020), https://www.folkhalsomyndigheten.se/contentassets/c1b78bffbfde4a7899eb0d8ffdb57b09/covid-19-school-aged-children.pdf.

85.     Additionally, teachers in Missouri have been eligible to receive a COVID-19 vaccination since early March 2021.

86.     Further, Emory Vaccine Center Director Rafi Ahmed, PhD reported that antibody responses from naturally infected COVID-19 patients were durable and offered a sustained defense against reinfection. The study additionally suggested that patients who survived COVID-19 are likely to also possess protective immunity even against some of the SARS-CoV-2 variants. Ahmed, Rafi et. al., *Longitudinal analysis shows durable and broad immune memory after SARS-CoV-2 infection with persisting antibody responses and memory B and T cells*. CELL REPORTS MEDICINE (July 14, 2021) https://www.cell.com/cell-reports-medicine/fulltext/S2666-3791(21)00203-2.

87.     Several studies show that children do not generally spread the coronavirus, even in school settings. The studies also demonstrate that children have very positive outcomes with a lower risk of death and severe health outcomes.

## II.     Masks fail to provide adequate protection and offer a false sense of security.

88.     Mask use by the general population shows, at best, a marginal impact on the spread of COVID-19. And most studies show no distinguishable difference between places with mask mandates and those without them.

89.     A much-touted research paper claimed that mask mandates had reversed COVID-19 incidence in Kansas counties that had implemented them. *See* Miriam E. Van Dyke, *Trends in County-Level COVID-19 Incidence in Counties With and Without a Mask Mandate—Kansas, June 1-August 23, 2020,* 69 MORBIDITY & MORTALITY WEEKLY REP. 1777, 1778 (2020). However, that paper was based on early data that was later found to be inaccurate. When the updated data was studied, it did not show any reversal in COVID-19 incidence. Kevin Dayaratna & Norbert J. Michel, *A Statistical Analysis of Mandates and Mask Usage in Kansas,* THE HERITAGE FOUND.: SPECIAL REPORT, Apr. 15, 2021, at 6. Additionally, the paper suffered

from numerous methodological deficiencies that prevented it from being useful. *See id.* at 13–14 & charts 2 & 3.

90.　　"[M]ask mandates and use were poor predictors of COVID-19 spread in US states." Damian D. Guerra & Daniel J. Guerra, *Mask Mandate and Use Efficacy in State- Level COVID-19 Containment* 12 (MedRxiv, Preprint, May 25, 2021).

91.　　Though the European Centre for Disease Prevention and Control advocates for universal public mask use, it has conceded that the evidence of the benefit in wearing a surgical mask was "of low to moderate certainty" and failed to show statistically significant benefits. EUROPEAN CTR. FOR DISEASE PREVENTION & CONTROL, USING FACE MASKS IN THE COMMUNITY: FIRST UPDATE 5 (2021). As for non-medical (i.e., cloth) facemasks: "We did not identify any interventional or observational study directly comparing the effectiveness of non-medical face masks with that of medical face masks and no masks." *Id.* at 7. Another study advocating for mask usage noted that "[t]he quality of the evidence [regarding the effectiveness of masks] is problematic." Julii Brainard et al., *Community Use of Face Masks and Similar Barriers to Prevent Respiratory Illness Such as COVID- 19: A Rapid Scoping Review,* EUROSURVEILLANCE, at 9 (Dec. 10, 2020).

92.　　Another study reported that "the scientific evidence [of whether masks prevent viral respiratory infections] should be considered equivocal." Olga Perski et al., *Face Masks to Prevent Community Transmission of Viral Respiratory Infections: A Rapid Review Using Bayesian Analysis,* QEIOS, at 14 (May 1, 2020).

93.　　According to recent report, a study published by the CDC found that mitigation measures in schools, and in particular "requiring student masking were each found to not have a

statistically significant benefit." David Zweig, *Following the Science: The Science of Masking Kids at School Remains Uncertain,* NY Mag (Aug. 20, 2021).

94.     The observational data and anecdotal evidence similarly show that public mask use has little effect on community spread or stopping infection surges.

95.     That is unsurprising because masks—especially cloth masks—are not able to stop "the smaller inhalable particles" that are largely response for transmission" of COVID-19. Lisa M. Brosseau & Margaret Sietsema, *Commentary: Masks-for-All for COVID-19 Not Based on Sound Data,* CTR. INFECTIOUS DISEASE RES. & POL. Apr. 1, 2020), https://bit.ly/3saPjgK.

96.     Indeed, masks have long been considered one measure that offers their wearers a false sense of security.

97.     Adults, let alone children, may not properly wear masks. As recently observed, "[f]olks who don't know how to wear [masks] properly tend to touch their faces a lot and actually can increase the spread of coronavirus." Jeffrey H. Anderson, *Do Masks Work?,* CITY J. (Aug. 11, 2021), https://www.city-journal.org/do-masks-work-a-review-of-the-evidence (quoting tweet from former Surgeon General Jerome Adams). One study found that "[r]ates of infection were consistently higher among those in the cloth mask group than in the medical mask and control groups. … The poor performance may have been because the masks were not washed frequently enough or because they became moist and contaminated." Abrar A. Chughtai et al., *Effectiveness of Cloth Masks for Protection Against Severe Acute Respiratory Syndrome Coronavirus 2,* EMERGING INFECTIOUS DISEASES: ONLINE REPORT, at e2 (Oct. 2020).

## III.     Masks can harm children.

98.     Requiring children to mask is not a mere convenience; there are real costs to such measures.

99.     In the United Kingdom, "[f]ace coverings are no longer advised for pupils, staff and visitors either in classrooms or in communal areas." U.K., Dep't of Educ., Guidance: Schools in COVID-19 Operational Guidance (last updated Aug. 27, 2021), available at https://www.gov.uk/government/publications/actions-for-schools-during-the-coronavirus-outbreak/schools-covid-19-operational-guidance#face-coverings (last visited Aug. 27, 2021).

100.    A study on mask use in 25,930 schoolchildren found that 68% "complained about impairments caused by wearing the masks," including "irritability (60%), headache (53%), difficulty concentrating (50%), less happiness (49%), reluctance to go to school/kindergarten (44%), malaise (42%), impaired learning (38%) and drowsiness/fatigue (37%)." Silke Schwarz et al., *Coronakinderstudien co-Ki: Erste Ergebnisse Eines Deutschlandweiten Registers zur Mund-Nasen-Bedeckung (Maske) bei Kindern,* 169 MONATSSCHRIFT KINDERHEILKUNDE 353, 355 (2021).

101.    Importantly, mask use by young children is detrimental to their communication skills at a critical stage of their development. The World Health Organization notes that masking young children raises social and communication concerns. Specifically, researchers are concerned that masks may "hinder[] verbal and non-verbal communication." Jonas F. Ludvigsson, Opinion, *Little Evidence for Facemask Use in Children Against COVID-19*, 110 ACTA PEADIATRICA 745 745 (2021).

102.    One study found, for example, that "children correctly identified the emotional expression on uncovered faces about 66% of the time ... [but] [l]ooking at faces in surgical-type masks, ... were only able to correctly identify sadness about 28% of the time, anger 27% of the time, and fear 18% of the time." Robert Lee Hotz, Covid Face Masks Are Disrupting a Key Tool of Human Communications, New Research Shows, WALL ST. J.: SCI. J. (Jan. 18, 2021),

https://on.wsj.com/3iO2fWG; see Clause-Christian Carbon, *Wearing Face Masks Strongly Confuses Counterparts in Reading Emotions*, FRONTIERS PSYCH., Sept. 2020, at 6. "Covering a child's face mutes these nonverbal forms of communication and can result in robotic and emotionless interactions, anxiety and depression. Seeing people speak is a building block of phonetic development. It is especially important for children with disabilities such as hearing impairment." Marty Makary & H. Cody Meissner, Opinion, *The Case Against Masks for Children*, WALL ST. J. (Aug. 8, 2021), https://on.wsj.com/3ANwOlt.

**IV.     Defendants have imposed mask mandates and quarantine policies.**

**a.     Excelsior Springs School District**

103.     Upon information and belief, on or around August 23, 2021, the ESSD School Board and ESSD adopted and implemented COVID-19 protocols for the Fall of 2021 that included a quarantine policy and imposed a mask mandate, under which all persons must wear face coverings in all indoor settings.

104.     Upon information and belief, before the ESSD School Board and ESSD finalized their mask and quarantine plans for the Fall of 2021, many parents, guardians, family members, and other resident taxpayers, including NPA members, attended school board meetings and communicated their concerns with and opposition to such policies. In addition, upon information and belief, ESSD School Board and ESSD received written and other forms of communication from parents, guardians, family members, and other resident taxpayers, including NPA members, in opposition to the policies.

105.     Upon information and belief, the mask mandate implemented by the ESSD School Board and ESSD is unsupported by substantial evidence (1) that mandating masks to be worn by all persons subject to the mask mandate would substantially reduce COVID-19 numbers and

significantly prevent COVID-19 transmission in the community or (2) that only recommending masks (but letting students and families choose) would substantially increase COVID-19 numbers and significantly further COVID-19 spread in the community.

106.    Upon information and belief, the mask mandate implemented by the ESSD School Board and ESSD has been inconsistently applied and enforced.

107.    Upon information and belief, the quarantine policy implemented by the ESSD School Board and ESSD is unsupported by substantial evidence (1) that quarantine policy would substantially reduce COVID-19 numbers and significantly prevent COVID-19 transmission in the community or (2) that the quarantine policy would substantially increase COVID-19 numbers and significantly further COVID-19 spread in the community.

108.    Upon information and belief, ESSD requires a COVID-19-unvaccinated student to quarantine if the student has been in close contact with a COVID-19-positive person, even if that unvaccinated student is symptom-free and has previously been infected with the virus and has COVID-19 antibodies.

109.    Upon information and belief, ESSD does not require a COVID-19-vaccinated student to quarantine if the student has been in close contact with a COVID-19-positive person, so long as the vaccinated student is symptom-free.

110.    Upon information and belief, the quarantine policy implemented by the ESSD School Board and ESSD has been inconsistently applied and enforced.

### b.    Kearney School District

111.    Upon information and belief, on or around August 14, 2021, the KSD School Board and KSD adopted and implemented COVID-19 protocols for the Fall of 2021 that included a quarantine policy and imposed a mask mandate, under which universal, indoor masking is required

for all students, staff members, and visitors regardless of vaccination status.

112. Upon information and belief, before the KSD School Board and KSD finalized their mask and quarantine plans for the Fall of 2021, many parents, guardians, family members, and other resident taxpayers, including NPA members, attended school board meetings and communicated their concerns with and opposition to such policies. In addition, upon information and belief, KSD School Board and KSD received written and other forms of communication from parents, guardians, family members, and other resident taxpayers, including NPA members, in opposition to the policies.

113. Upon information and belief, the mask mandate implemented by the KSD School Board and KSD is unsupported by substantial evidence (1) that mandating masks to be worn by all persons subject to the mask mandate would substantially reduce COVID-19 numbers and significantly prevent COVID-19 transmission in the community or (2) that only recommending masks (but letting students and families choose) would substantially increase COVID-19 numbers and significantly further COVID-19 spread in the community.

114. Upon information and belief, the mask mandate implemented by the KSD School Board and KSD has been inconsistently applied and enforced.

115. Upon information and belief, the quarantine policy implemented by the KSD School Board and KSD is unsupported by substantial evidence (1) that quarantine policy would substantially reduce COVID-19 numbers and significantly prevent COVID-19 transmission in the community or (2) that the quarantine policy would substantially increase COVID-19 numbers and significantly further COVID-19 spread in the community.

116. Upon information and belief, KSD requires a COVID-19-unvaccinated student to quarantine if the student has been in close contact with a COVID-19-positive person, even if that

unvaccinated student is symptom-free and has previously been infected with the virus and has COVID-19 antibodies.

117.     Upon information and belief, KSD does not require a COVID-19-vaccinated student to quarantine if the student has been in close contact with a COVID-19-positive person, so long as the vaccinated student is symptom-free.

118.     Upon information and belief, the quarantine policy implemented by the KSD School Board and KSD has been inconsistently applied and enforced.

### c.     Liberty Public Schools

119.     Upon information and belief, on or around August 2021, the LPS School Board and LPS adopted and implemented COVID-19 protocols for the fall of 2021 that included a quarantine policy and imposed a mask mandate, under which all students, staff members, and visitors must wear masks while inside district facilities.

120.     Upon information and belief, before the LPS School Board and LPS finalized their mask and quarantine plans for the Fall of 2021, many parents, guardians, family members, and other resident taxpayers, including NPA members, attended school board meetings and communicated their concerns with and opposition to such policies. In addition, upon information and belief, LPS School Board and LPS received written and other forms of communication from parents, guardians, family members, and other resident taxpayers, including NPA members, in opposition to the policies.

121.     Upon information and belief, the mask mandate implemented by the LPS School Board and LPS is unsupported by substantial evidence (1) that mandating masks to be worn by all persons subject to the mask mandate would substantially reduce COVID-19 numbers and significantly prevent COVID-19 transmission in the community or (2) that only recommending

masks (but letting students and families choose) would substantially increase COVID-19 numbers and significantly further COVID-19 spread in the community.

122.    Upon information and belief, the mask mandate implemented by the LPS School Board and LPS has been inconsistently applied and enforced.

123.    Upon information and belief, the quarantine policy implemented by the LPS School Board and LPS is unsupported by substantial evidence (1) that quarantine policy would substantially reduce COVID-19 numbers and significantly prevent COVID-19 transmission in the community or (2) that the quarantine policy would substantially increase COVID-19 numbers and significantly further COVID-19 spread in the community.

124.    Upon information and belief, LPS requires a COVID-19-unvaccinated student to quarantine if the student has been in close contact with a COVID-19-positive person, even if that unvaccinated student is symptom-free and has previously been infected with the virus and has COVID-19 antibodies.

125.    Upon information and belief, LPS does not require a COVID-19-vaccinated student to quarantine if the student has been in close contact with a COVID-19-positive person, so long as the vaccinated student is symptom-free.

126.    Upon information and belief, the quarantine policy implemented by the LPS School Board and LPS has been inconsistently applied and enforced.

      **d.**    **NKC Schools**

127.    Upon information and belief, on or around July 29, 2021, the NKC School Board and NKC Schools adopted and implemented COVID-19 protocols for the fall of 2021 that included a quarantine policy and imposed a mask mandate, under which all students, staff members, and visitors must wear masks while inside all NKC schools.

128.    Upon information and belief, before the NKC School Board and NKC Schools finalized their mask and quarantine plans for the Fall of 2021, many parents, guardians, family members, and other resident taxpayers, including NPA members, attended school board meetings and communicated their concerns with and opposition to such policies. In addition, upon information and belief, NKC School Board and NKC Schools received written and other forms of communication from parents, guardians, family members, and other resident taxpayers, including NPA members, in opposition to the policies.

129.    Upon information and belief, the mask mandate implemented by the NKC School Board and NKS Schools is unsupported by substantial evidence (1) that mandating masks to be worn by all persons subject to the mask mandate would substantially reduce COVID-19 numbers and significantly prevent COVID-19 transmission in the community or (2) that only recommending masks (but letting students and families choose) would substantially increase COVID-19 numbers and significantly further COVID-19 spread in the community.

130.    Upon information and belief, the mask mandate implemented by the NKC School Board and NKC Schools has been inconsistently applied and enforced.

131.    Upon information and belief, the quarantine policy implemented by the NKC School Board and NKC Schools is unsupported by substantial evidence (1) that quarantine policy would substantially reduce COVID-19 numbers and significantly prevent COVID-19 transmission in the community or (2) that the quarantine policy would substantially increase COVID-19 numbers and significantly further COVID-19 spread in the community.

132.    Upon information and belief, NKC Schools requires a COVID-19-unvaccinated student to quarantine if the student has been in close contact with a COVID-19-positive person,

even if that unvaccinated student is symptom-free and has previously been infected with the virus and has COVID-19 antibodies.

133.    Upon information and belief, NKC Schools does not require a COVID-19-vaccinated student to quarantine if the student has been in close contact with a COVID-19-positive person, so long as the vaccinated student is symptom-free.

134.    Upon information and belief, the quarantine policy implemented by the NKC School Board and NKC Schools has been inconsistently applied and enforced.

       **e.**    **Park Hill**

135.    Upon information and belief, on or around August 16, 2021, the PHSD School Board and PHSD Schools adopted and implemented COVID-19 protocols for the fall of 2021 that included a quarantine policy and imposed a mask mandate, under which all individuals aged 3 and older inside all district facilities are required to wear masks.

136.    Upon information and belief, before the PHSD School Board and PHSD finalized their mask and quarantine plans for the Fall of 2021, many parents, guardians, family members, and other resident taxpayers, including NPA members, attended school board meetings and communicated their concerns with and opposition to such policies. In addition, upon information and belief, PHSD School Board and PHSD received written and other forms of communication from parents, guardians, family members, and other resident taxpayers, including NPA members, in opposition to the policies.

137.    Upon information and belief, the mask mandate implemented by the PHSD School Board and PHSD is unsupported by substantial evidence (1) that mandating masks to be worn by all persons subject to the mask mandate would substantially reduce COVID-19 numbers and significantly prevent COVID-19 transmission in the community or (2) that only recommending

masks (but letting students and families choose) would substantially increase COVID-19 numbers and significantly further COVID-19 spread in the community.

138.     Upon information and belief, the mask mandate implemented by the PHSD School Board and PHSD has been inconsistently applied and enforced.

139.     Upon information and belief, the quarantine policy implemented by the PHSD School Board and PHSD is unsupported by substantial evidence (1) that quarantine policy would substantially reduce COVID-19 numbers and significantly prevent COVID-19 transmission in the community or (2) that the quarantine policy would substantially increase COVID-19 numbers and significantly further COVID-19 spread in the community.

140.     Upon information and belief, PHSD requires a COVID-19-unvaccinated student to quarantine if the student has been in close contact with a COVID-19-positive person, even if that unvaccinated student is symptom-free and has previously been infected with the virus and has COVID-19 antibodies.

141.     Upon information and belief, PHSD does not require a COVID-19-vaccinated student to quarantine if the student has been in close contact with a COVID-19-positive person, so long as the vaccinated student is symptom-free.

142.     Upon information and belief, the quarantine policy implemented by the PHSD School Board and PHSD has been inconsistently applied and enforced.

### f.     Platte County R-III

143.     Upon information and belief, on or about August 12, 2021, the PCSD School Board and PCSD adopted and implemented COVID-19 protocols for the fall of 2021 that included a quarantine policy and imposed a mask mandate, under which all students, staff, and visitors aged

3 and older while indoors at PCSD buildings are required to wear face coverings when physical distancing cannot be maintained.

144. Upon information and belief, before the PCSD School Board and PCSD finalized their mask and quarantine plans for the Fall of 2021, many parents, guardians, family members, and other resident taxpayers, including NPA members, attended school board meetings and communicated their concerns with and opposition to such policies. In addition, upon information and belief, the PCSD School Board and PCSD received written and other forms of communication from parents, guardians, family members, and other resident taxpayers, including NPA members, in opposition to the policies.

145. Upon information and belief, the mask mandate implemented by the PCSD School Board and PCSD is unsupported by substantial evidence (1) that mandating masks to be worn by all persons subject to the mask mandate would substantially reduce COVID-19 numbers and significantly prevent COVID-19 transmission in the community or (2) that only recommending masks (but letting students and families choose) would substantially increase COVID-19 numbers and significantly further COVID-19 spread in the community.

146. Upon information and belief, the mask mandate implemented by the PCSD School Board and PCSD has been inconsistently applied and enforced.

147. Upon information and belief, the quarantine policy implemented by the PCSD School Board and PCSD is unsupported by substantial evidence (1) that quarantine policy would substantially reduce COVID-19 numbers and significantly prevent COVID-19 transmission in the community or (2) that the quarantine policy would substantially increase COVID-19 numbers and significantly further COVID-19 spread in the community.

148.     Upon information and belief, PCSD requires a COVID-19-unvaccinated student to quarantine if the student has been in close contact with a COVID-19-positive person, even if that unvaccinated student is symptom-free and has previously been infected with the virus and has COVID-19 antibodies.

149.     Upon information and belief, PCSD does not require a COVID-19-vaccinated student to quarantine if the student has been in close contact with a COVID-19-positive person, so long as the vaccinated student is symptom-free.

150.     Upon information and belief, the quarantine policy implemented by the PCSD School Board and PCSD has been inconsistently applied and enforced.

           g.     **Smithville School District**

151.     Upon information and belief, on or around August 23, 2021, the SSD School Board and SSD adopted and implemented COVID-19 protocols for the fall of 2021 that included a quarantine policy and imposed a mask mandate, under which all students, staff and visitors inside any SSD facility are required to wear masks.

152.     Upon information and belief, before the SSD School Board and SSD finalized their mask and quarantine plans for the Fall of 2021, many parents, guardians, family members, and other resident taxpayers, including NPA members, attended school board meetings and communicated their concerns with and opposition to such policies. In addition, upon information and belief, the SSD School Board and SSD received written and other forms of communication from parents, guardians, family members, and other resident taxpayers, including NPA members, in opposition to the policies.

153.     Upon information and belief, the mask mandate implemented by the SSD School Board and SSD is unsupported by substantial evidence (1) that mandating masks to be worn by all

persons subject to the mask mandate would substantially reduce COVID-19 numbers and significantly prevent COVID-19 transmission in the community or (2) that only recommending masks (but letting students and families choose) would substantially increase COVID-19 numbers and significantly further COVID-19 spread in the community.

154.     Upon information and belief, the mask mandate implemented by the SSD School Board and SSD has been inconsistently applied and enforced.

155.     Upon information and belief, the quarantine policy implemented by the SSD School Board and SSD is unsupported by substantial evidence (1) that quarantine policy would substantially reduce COVID-19 numbers and significantly prevent COVID-19 transmission in the community or (2) that the quarantine policy would substantially increase COVID-19 numbers and significantly further COVID-19 spread in the community.

156.     Upon information and belief, SSD requires a COVID-19-unvaccinated student to quarantine if the student has been in close contact with a COVID-19-positive person, even if that unvaccinated student is symptom-free and has previously been infected with the virus and has COVID-19 antibodies.

157.     Upon information and belief, SSD does not require a COVID-19-vaccinated student to quarantine if the student has been in close contact with a COVID-19-positive person, so long as the vaccinated student is symptom-free.

158.     Upon information and belief, the quarantine policy implemented by the SSD School Board and SSD has been inconsistently applied and enforced.

h.     City of Kansas City, Missouri

159.     Upon information and belief, on or about August 2, 2021, the Mayor and City Council of the City of Kansas City (collectively "City of Kansas City") imposed a mask mandate,

under which all individuals over the age of 5 are required to wear masks or facial coverings in all indoor spaces of public accommodation where six feet of social distancing cannot be maintained.

160. Upon information and belief, before the City of Kansas City finalized and approved the mask mandate, many residents attended City Council meetings and communicated their concerns with and opposition to the mandate. In addition, upon information and belief, the City of Kansas City received written and other forms of communication from residents in opposition to the policies.

161. Upon information and belief, the mask mandate implemented by the City of Kansas City is unsupported by substantial evidence (1) that mandating masks to be worn by students at school would substantially reduce COVID-19 numbers and significantly prevent COVID-19 transmission in the community or (2) that only recommending masks for students at school (but letting students and families choose) would substantially increase COVID-19 numbers and significantly further COVID-19 spread in the community.

162. Upon information and belief, the mask mandate implemented by the City of Kansas City has been inconsistently applied and enforced.

### i. City of North Kansas City, Missouri

163. Upon information and belief, on or about August 1, 2021, the Mayor of North Kansas City and City Council of North Kansas City (collectively "City of North Kansas City") imposed a mask mandate, under which all individuals over the age of 5, regardless of vaccination status, are required to wear a mask indoors in areas of public accommodation.

164. Upon information and belief, before the City of North Kansas City finalized and approved the mask mandate, many residents attended City Council meetings and communicated their concerns with and opposition to the mandate. In addition, upon information and belief, the

City of North Kansas City received written and other forms of communication from residents in opposition to the policies.

165. Upon information and belief, the mask mandate implemented by the City of North Kansas City is unsupported by substantial evidence (1) that mandating masks to be worn by students at school would substantially reduce COVID-19 numbers and significantly prevent COVID-19 transmission in the community or (2) that only recommending masks for students at school (but letting students and families choose) would substantially increase COVID-19 numbers and significantly further COVID-19 spread in the community.

166. Upon information and belief, the mask mandate implemented by the City of North Kansas City has been inconsistently applied and enforced.

167. The above-listed Defendants' mask mandates as applied to school children hereinafter are collectively referred to as "**Mask Mandates**"

168. The above-listed School Defendants' quarantine policies hereinafter are collectively referred to as "**Quarantine Policies**."

V. **Exemptions under School Defendants' Mask Mandates.**

    a.     **Excelsior Springs School District**

169. Upon information and belief, although the ESSD School Board and ESSD announced a mask mandate on or around August 23, 2021, no guidelines for exemptions were given to students' families other than a reference in an *Updated Reopen Plan* that a "Doctor note not to wear a mask" would be considered for a medical exemption. No provisions were to accommodate exemptions based on religious beliefs or conscientious objections.

170. Upon information and belief, ESSD administrators have discretion to allow some exemptions, including medical exemptions.

171.     Upon information and belief, the information provided by ESSD to students and families regarding medical exemptions has been unclear, inconsistent, and changing.

172.     Upon information and belief, the ESSD policy on mask exemptions based on medical reasons has been applied discretionally and inconsistently, and ESSD has denied many medical exemptions.

173.     Upon information and belief, ESSD is not allowing any exemptions based on religious beliefs or conscientious objections.

174.     Children of one or more NPA members in the ESSD have been denied a medical exemption to the mask mandate.

175.     Children of one or more NPA members in the ESSD have been denied a religious or conscience exemption to the mask mandate.

### b.    Kearney School District

176.     Upon information and belief, the mask mandate adopted by the KSD School Board and implemented by KSD includes no express provisions for exemptions to the mandate based on medical, religious, or conscientious reasons.

177.     Upon information and belief, the KSD School Board did not adopt a mask-exemption policy.

178.     Upon information and belief, KSD administrators have discretion to allow some exemptions, including medical exemptions.

179.     Upon information and belief, the information provided by KSD to students and families regarding medical exemptions has been unclear, inconsistent, and changing.

180.    Upon information and belief, KSD's policy on mask exemptions based on medical reasons has been applied discretionally and inconsistently, and KSD has denied many medical exemptions.

181.    Upon information and belief, KSD is not allowing any exemptions based on religious beliefs or conscientious objections.

182.    Upon information and belief, children of one or more NPA members in the KSD have been denied a medical exemption to the mask mandate.

183.    Upon information and belief, children of one or more NPA members in the KSD have been denied a religious or conscience exemption to the mask mandate.

c.    **Liberty Public Schools**

184.    Upon information and belief, the LPS School Board did not adopt a policy that would allow for exemptions to the district's mask mandate based on medical, religious, or conscience reasons.

185.    Upon information and belief, on or around August 20, 2021, LPS announced a plan that gave LPS the discretion to allow exemptions to the mask mandate based on "medical condition or disability." Information provided to students and families stated that an exemption may be granted to a student if "the individual's physician provides a written notice/order that verifies that the student or staff member cannot wear a mask, or cannot safely wear a mask for reasons related to a clearly identified and referenced medical condition or disability."

186.    Upon information and belief, LPS administrators have discretion to allow some exemptions, including medical exemptions.

187.    Upon information and belief, the information provided by LPS to students and families regarding medical exemptions has been unclear, inconsistent, and changing.

188.     Upon information and belief, LPS's policy on mask exemptions based on medical reasons has been applied inconsistently, and LPS has denied many medical exemptions.

189.     Upon information and belief, LPS is not allowing any exemptions based on religious beliefs or conscientious objections.

190.     Upon information and belief, children of one or more NPA members in LPS have been denied a medical exemption to the mask mandate.

191.     Upon information and belief, children of one or more NPA members in LPS have been denied a religious or conscience exemption to the mask mandate.

    **d.**  **NKC Schools**

192.     Upon information and belief, the NKC School Board did not adopt a policy that would allow for exemptions to the district's mask mandate based on medical, religious, or conscience reasons.

193.     Upon information and belief, in or around August 2021, NKC Schools announced a discretionary "Face Mask Exemption" plan, under which the district "might" allow face shield instead of masks if a student provided a note from a physician that included specific indication of one of seven medical conditions that NKC Schools deemed sufficient for consideration on whether to allow the student to wear a face shield instead of a mask.

194.     Upon information and belief, NKC Schools administrators have discretion to allow some exemptions, including medical exemptions.

195.     Upon information and belief, the information provided by NKC Schools to students and families regarding medical exemptions has been unclear, inconsistent, and changing.

196.    Upon information and belief, NKC Schools' plan for mask exemptions based on medical reasons has been applied inconsistently, and NKC Schools has denied many medical exemptions.

197.    Upon information and belief, NKC Schools is not allowing any exemptions based on religious beliefs or conscientious objections.

198.    Upon information and belief, children of one or more NPA members in NKC Schools have been denied a medical exemption to the mask mandate.

199.    Upon information and belief, children of one or more NPA members in NKC Schools have been denied a religious or conscience exemption to the mask mandate.

### e.    Park Hill School District

200.    Upon information and belief, the PHSD School Board did not adopt a policy that would allow for exemptions to the district's mask mandate based on medical, religious, or conscience reasons.

201.    Upon information and belief, PHSD administrators have discretion to allow some exemptions, including medical exemptions.

202.    Upon information and belief, PHSD is not allowing any exemptions based on religious beliefs or conscientious objections.

### f.    Platte County R-III

203.    Upon information and belief, the PCSD School Board did not adopt a policy that would allow for exemptions to the district's mask mandate based on medical, religious, or conscience reasons.

204.    Upon information and belief, PCSD administrators have discretion to allow some exemptions, including medical exemptions.

205.    Upon information and belief, PCSD is not allowing any exemptions based on religious beliefs or conscientious objections.

### g.    Smithville School District

206.    Upon information and belief, the SSD School Board did not adopt a policy that would allow for exemptions to the district's mask mandate based on medical, religious, or conscience reasons.

207.    Upon information and belief, on or around August 23, 2021, SSD announced a discretionary plan for allowing a mask exemption based on medical condition or disability, under which a medical mask exemption may be granted to a student provided the individual's treating physician provides a written notice or order that verifies that the student cannot wear a mask related to a "<u>clearly identified and diagnosed medical condition or disability and the reason a mask cannot be worn safely</u>."

208.    Upon information and belief, SSD administrators have discretion to allow some exemptions, including medical exemptions.

209.    Upon information and belief, the information provided by SSD to students and families regarding medical exemptions has been unclear, inconsistent, and changing.

210.    Upon information and belief, SSD's plan for mask exemptions based on medical reasons has been applied inconsistently, and SSD has denied many medical exemptions.

211.    Upon information and belief, SSD is not allowing any exemptions based on religious beliefs or conscientious objections.

212.    Upon information and belief, children of one or more NPA members in SSD have been denied a medical exemption to the mask mandate.

213. Upon information and belief, children of one or more NPA members in SSD have been denied a religious or conscience exemption to the mask mandate.

**VI. In implementing Mask Mandates for children at schools, Defendants failed to consider important aspects and factors regarding the masking of children and neglected the comments and information provided by members of the electorate in opposition to the Mask Mandates.**

214. Upon information and belief, in imposing mask mandates on school children, Defendants did not consider the harms of masking children.

215. Upon information and belief, Defendants failed to consider the comments and information provided by parents, guardians, and other members of the electorate who were concerned about the harms of masking children and expressed opposition to policies mandating that children wear masks at school.

216. On information and belief, Defendants failed to consider the science and evidence showing that children generally do not affect community spread and that children do not readily transmit the coronavirus, or the science and evidence showing lower risks of infection, transmission, and severe health outcomes in children from COVID-19.

217. On information and belief, Defendants failed to consider the science and evidence showing that mask use by the general population has little to no effect on community spread, and that mask mandates also have limited effectiveness, at best, in preventing community spread.

218. On information and belief, Defendants failed to consider the changed circumstances of vaccinated persons (including of teachers, school staff, and eligible children) and the number of vaccinated persons increasing each day.

219. On information and belief, Defendants failed to consider the effect that natural immunity and antibodies imparted to persons previously infected with COVID-19 (including teachers, school staff, and children) would have on community spread.

220. No restriction or policy imposed by Defendants can be "unconstitutional, unlawful, unreasonable, arbitrary, or capricious, or involve[] an abuse of discretion." § 536.150.1 RSMo. Government action is arbitrary, capricious, and unreasonable when it is based on *post hoc* rationalization, when it fails to consider an important part of the problem it is addressing, and when it fails to consider less restrictive alternatives before infringing on citizens' liberty. *See*, *e.g.*, *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1905, 1909 (2020); *Michigan v. EPA*, 135 S. Ct. 2699, 2706 (2015). "[A]n agency which completely fails to consider an important aspect or factor of the issue before it may also be found to have acted arbitrarily and capriciously." *Barry Serv. Agency Co. v. Manning*, 891 S.W.2d 882, 892 (Mo. App. W.D. 1995) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983)). In addition, agencies must consider whether there are less restrictive policies that would achieve their goals. *See Regents of the Univ. of Calif.*, 140 S. Ct. at 1912 (quoting *State Farm Mut. Auto.*, 463 U.S. at 51).

221. Upon information and belief, the Mask Mandates are unsupported by substantial evidence (1) that mandating masks to be worn by all persons subject to the mandates would substantially reduce COVID-19 numbers and significantly prevent COVID-19 transmission in the community or (2) that recommending masks (but letting students and families choose) would

substantially increase COVID-19 numbers and significantly further COVID-19 spread in the community.

222.    The mask mandates are unconstitutional, unlawful, unreasonable, arbitrary, and capricious, and involve an abuse of discretion.

<u>**COUNT I**</u>
<u>**(all Defendants)**</u>
<u>**Defendants' Mask Mandates are unreasonable, arbitrary and capricious as applied to school children, § 536.150.1, RSMO.**</u>

223.    Plaintiff hereby incorporates paragraphs 1 - 222 of this Complaint as if fully set forth herein.

224.    The NPA challenges the validity of the Mask Mandates, and seeks a declaration that they are "unreasonable, arbitrary, or capricious." § 536.150.1, RSMo. The Mask Mandates are not subject to administrative review. *Id.*

225.    School Districts are "agencies" within the definition § 536.010(2), RSMo. *P.L.S. ex rel. Shelton v. Koster*, 360 S.W.3d 805, 818 (Mo. Ct. App. 2011), *as modified* (Jan. 31, 2012). School Districts may not exercise their power in an "unreasonable, arbitrary, capricious or unlawful manner." *Magenheim v. Bd. of Educ. of Sch. Dist. of Riverview Gardens*, 347 S.W.2d 409, 417 (Mo. App. 1961).

226.    The Mask Mandates require all children attending schools in the districts of Defendant Schools to wear a mask with few exceptions while they are at school. The Mask Mandates are therefore agency decisions that determine "legal rights, duties, or privileges." § 536.150.1, RSMo.

227.    Missouri schoolchildren are not validly subject to the Mask Mandates because they are "unreasonable, arbitrary, or capricious," § 536.150.1, RSMo, for several reasons.

228.     First, the masking requirement for schoolchildren is unreasonable, arbitrary, and capricious. Schoolchildren are generally not at risk of serious illness even if they get COVID-19, thus reducing the need for harsher non-pharmaceutical intervention. *See*, *e.g.*, Marty Makary, Opinion, *The Flimsy Evidence Behind the CDC's Push to Vaccinate Children*, WALL ST. J. (July 19, 2021) ("Our report found a mortality rate of zero among children without a pre-existing medical condition such as leukemia."). On information and belief, Defendants failed to consider that fact in deciding to promulgate the Mask Mandates.

229.     Second, on information and belief, Defendants failed to consider several important factors relating to masking for schoolchildren:

a.     To start, the Mask Mandate fails to account for the fact that children are less likely to contract COVID-19 and that, if they do contract it, display less severe symptoms. *See, e.g.,* Nicholas G. Davies *Age-Dependent Effects in the Transmission and Control of COVID-19 Epidemics,* 26 NATURE MED. 1205, 1205 (2020) (concluding that susceptibility of infection in those under twenty is half that for those over twenty and that those under twenty do not manifest clinical symptoms as often). That suggests that children are also less likely to transmit the virus, *see id.* At 1208-09, which appears to be the consensus position.[2] There is thus a much less pressing need for masking among young children. That includes within schools. One study found "an infection rate of 0.13% and 0.24% among staff" after analyzing in-school infection data from over 47 states. Patrick Boyle, *Kids, School, and COVID-19: What We Know– and What We Don't,* AAMC (Nov. 5, 2020).

---

[2] See, e.g., Eun Young Cho et al., Letter to the Editor, *Interpreting Transmissibility of COVID-19 in Children*, 26 EMERGING INFECTIOUS DISEASES 3106, 3107 (2020) (interpreting data); Patrick Boyle, *Kids, School, and COVID-19: What We Know— and What We Don't*, AAMC (Nov. 5, 2020), https://bit.ly/3kQDvyG ("Several studies have found that children transmit the virus, but perhaps not as often as adults, especially in younger age groups. It's not clear why."); Eli Somekh et al., *The Role of Children in the Dynamics of Intra Family Coronavirus 2019 Spread in Densely Populated Areas*, 39 PEDIATRICS INFECTIOUS DISEASE J. 202, 203–04 (2020) (noting studies indicating that children are less likely to get COVID-19, and finding similar results).

Rather, schools are more likely to be affected by COVID-19 rates in the community than be sites of super-spreader events. *See id.*[3]

b.      But while the risks schoolchildren face from COVID-19, as well as the risk that they transmit the virus, are relatively low, there is a significant cost to forcing them to mask. For one, masks hinder "verbal and non-verbal communication." Jonas F. Ludvigsson, Editorial, *Little Evidence for Facemask Use in Children Against COVID-19*, 110 ACTA PAEDITRICA 742, 742 (2021); *see* Connor Harris, *Do We Need Mask Mandates?*, CITY J. (Mar. 22, 2021), https://www.city-journal.org/do-we-need-mask-mandates ("Some child development researchers also worry that widespread mask- wearing may hamper children's linguistic and emotional development."); *see also* John T. Brooks, et al., *Effectiveness of Mask Wearing to Control Community Spread of SARS-CoV-2*, JOURNAL OF THE AMERICAN MEDICAL ASSOCIATION, Feb. 10, 2021, at 7 (finding that "children were less accurate with faces that wore a mask compared to faces that were not covered"). And the same risks associated with mask use in adults are present with respect to children—namely, that the masks may create a false sense of security and that failing to properly wear face masks over their nose and mouths and that touching the masks will eliminate, if not exceed, any benefit achieved by having students wear masks. *See id.*

c.      There are also common-sense concerns with having schoolchildren wear a face mask all day while at school, such as general discomfort. *See* Harris, *supra* ("In a self-selected survey of German schoolchildren, more than half of the participants reported headaches.").

---

[3] *See also, e.g.*, CDC, *Science Brief: Transmission of SARS-CoV-2 in K-12 Schools and Early Care and Education Programs—Updated* (updated July 9, 2021), https://bit.ly/3rxQeaR; *Questions and Answers on COVID-19: Children Aged 1–18 Years and the Role of Schools Settings*, European Centre for Disease Prevention & Control (updated Jan. 25, 2021), https://bit.ly/3j3yHDJ. *But see* Zoe Hyde, Perspectives, *COVID- 19, Children and Schools: Overlooked and at Risk*, 213 MED. J. AUSTL. 444, 446 (2020) (arguing that schools play a bigger role in transmission than assumed, but conceding that "[w]hether young and older children transmit the virus similarly is unknown and requires urgent clarification").

Similarly, mask requirements also take up instructional time as teachers police mask compliance, take mask breaks outdoors, send students to get masks, and punish students for failing to comply.

d.     Finally, children with special needs may find it especially difficult to wear masks but may not be able to take advantage of any of the exceptions in the Mask Mandate. The mandate thus jeopardizes their ability to be in public places under the Mask Mandate. *See The Challenge of Face Masks*, ORG. FOR AUTISM RES. (Nov. 12, 2020), https://bit.ly/3eVYRa3. While the Mask Mandate's exempts those who are not able to wear a mask in Section 2.B.2, that exemption is vague, and arguably very narrow. It is therefore unclear whether it would exempt all special needs children—for example, all of those on the autism spectrum. *See id.*

e.     Defendants failed to consider the effect natural immunity and antibodies from the population (including children) that previously contracted COVID- 19 have on community spread.

f.     Defendants failed to consider over a year's worth of data showing that mask use, including a mask mandate, has little to no effect in preventing community spread of COVID-19.

g.     On information and belief, Defendants failed to consider whether the Mask Mandate—because it treats vaccinated individuals like unvaccinated ones— discourages people from receiving the vaccine by implying that vaccines have limited efficacy. *Cf.* Rachel Holloway et al., *Updated Preparedness and Response Framework for Influenza Pandemics*, MORBIDITY & MORTALITY WEEKLY REPORT, Sept. 26, 2014, at 6 (saying vaccine availability is a consideration when determining what actions to take during a pandemic).

h.     Defendants failed to consider non-COVID-19 harms to masking children, including emotional, psychological, and social harms.

i.    Defendants only considered the risk of a single COVID-19 infection and not the health outcomes from such an infection.

230.    Upon information and belief, Defendants failed to consider the comments and information provided by parents, guardians, and other members of the electorate who were concerned about the harms of masking children and expressed opposition to policies mandating that children wear masks at school.

231.    Upon information and belief, Defendants failed to consider substantial evidence (1) that mandating masks to be worn by all persons subject to the Mask Mandates would substantially reduce COVID-19 numbers and significantly prevent COVID-19 transmission in the community or (2) that recommending masks (and letting students and families choose whether to wear them) would substantially increase COVID-19 numbers and significantly further COVID-19 spread in the community.

232.    On information and belief, Defendants failed to consider such factors in applying the Mask Mandates to schoolchildren. They therefore failed to engage in reasoned decision-making, and, as a result, subjected schoolchildren to an unnecessary, burdensome, and harmful mask mandate.

233.    For those reasons, the Mask Mandates are unreasonable, arbitrary, and capricious and the schoolchildren should not be subject to them.

### COUNT II
### (all Defendants)
### Defendants' Mask Mandates are unlawful as applied to school children.
### § 536.150.1, RSMo.

234.    Plaintiff hereby incorporates paragraphs 1 - 233 of this Complaint as if fully set forth herein.

235.     In the alternative, the Plaintiff challenges the validity of the Mask Mandates, and seek a declaration that they are "unlawful" and therefore the schoolchildren cannot be lawfully subjected to them. § 536.150.1, RSMo. The Mask Mandates are not subject to administrative review. *Id.*

236.     By law, "[i]t shall be the general duty and responsibility of the department of health and senior services to safeguard the health of the people in the state and all its subdivisions." § 192.020.1, RSMo.

237.     DHSS permits local health authorities to create and enforce only orders "adequate . . . to prevent the spread of [a] disease and other measures considered by the . . . local health authority as appropriate disease control measures based upon the disease . . . ." 19 C.S.R. § 20-20.040.2(G).

238.     DHSS has not delegated that authority to school districts.

239.     Neither Platte County nor Clay County have issued an order mandating masks.

240.     Missouri law does not authorize School Defendants to impose a Mask Mandate.

241.     School Defendants do not have authority to impose Mask Mandates for public health reasons.

242.     Neither the Missouri Constitution nor the General Assembly has granted School Defendants a general police power to enact law for the public welfare.

243.     In fact, Missouri statutes that require DHSS to set health policy in schools indicate that only DHSS may provide appropriate measures to safeguard the public health. *See* § 167.181, RSMo (DHSS develops informational brochure on HPV).

244.     The Mask Mandates are not authorized under 19 CSR 20-20.040 because they are neither "adequate" to prevent the spread of disease nor "appropriate" as a disease control measure among K-12 schoolchildren, for all the reasons stated herein.

245.     For these reasons, the Mask Mandates are an unlawful order, and the schoolchildren should not be subject to them.

**COUNT III**
**(all Defendants)**
**Declaration that the Mask Mandates are subject to § 67.265 RSMo and**
**expire without further authorization.**

246.     Plaintiff hereby incorporates paragraphs 1 - 245 of this Complaint as if fully set forth herein.

247.     Plaintiff seeks a declaration that the Mask Mandates are subject to the requirements of § 67.265.2, RSMo.

248.     Defendants are political subdivisions within § 67.265.1, RSMo.

249.     There was a broad emergency order declared pursuant to chapter 44, RSMo., which was terminated on August 27, 2021.

250.     The Mask Mandates are "orders" as defined by § 67.265.1, RSMo.

251.     The Mask Mandates are also orders that "directly or indirectly closes, partially closes, or places restrictions on the opening or access to any one or more business organizations, churches, schools, or other places of public or private gathering or assembly, including any order, ordinance, rule, or regulation of general applicability or that prohibits or otherwise limits attendance at any public or private gathering …." § 67.265.1(1), RSMo.

252.     The Mask Mandates place restrictions on access to "business organizations, churches, schools, or other places of public or private gathering or assembly," § 67.265.1(1),

RSMo, because they limit access to schools to only masked individuals or to individuals who fall under an exception to the mask requirement.

253.    On information and belief, students who refuse to comply with the Mask Mandates will be excluded from school property, will face discipline, and may be sent home.

254.    On information and belief, students who refuse to comply with the Mask Mandates will not be allowed in school and may be required to use virtual instruction.

255.    As a result, the Mask Mandates are subject to § 67.265, RSMo, and expire after thirty days absent authorization by a majority vote of the governing bodies, *i.e.*, the Boards of Education for the School Defendants or the city councils for the City Defendants.

256.    The Mask Mandates are also subject to § 67.265.2, RSMo, and may be terminated at any time by a simple majority vote of the governing bodies.

**COUNT IV**
**(all School Defendants)**
**School Defendants' Mask Mandates violate the Equal Protection Clause**
**of the U.S. Constitution**

257.    Plaintiff hereby incorporates paragraphs 1 - 256 of this Complaint as if fully set forth herein.

258.    Under the Fourteenth Amendment to the U.S. Constitution, no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1.

259.    A state providing a public education must ensure that education is available to all on equal terms. *Brown v. Board of Educ.,* 347 U.S. 483, 493 (1954).

260.    School Defendants acted under color of law in adopting, implementing, and enforcing the Mask Mandates.

261.    As applied to schoolchildren, the Mask Mandates imposed by School Defendants treat similarly situated persons differently without adequate justification.

262.     School Defendants' mask mandates disproportionately impact early-childhood students, as face coverings impair young children's ability to learn language and socialize.

263.     Upon information and belief, School Defendants did not consider or neglected to adequately account for the disproportionate impact the Mask Mandates would have on early-childhood students.

264.     Upon information and belief, School Defendants' Mask Mandates apply to younger children than even the cities' mandates (which apply only to children ages 5 and up).

265.     Through their Mask Mandates, School Defendants unfairly and arbitrarily treat children who participate in public early-child education programs in the school districts differently than children who do not.

266.     The Mask Mandates disproportionately impact English-language learner students, as face coverings inhibit their ability to communicate with their teachers and peers.

267.     Upon information and belief, School Defendants did not consider or neglected to adequately account for the disproportionate impact the Mask Mandates would have on English-language learner students.

268.     The Mask Mandates disproportionately impact students who are hard of hearing or who have hearing or speech disabilities, because masks can hinder communication with such persons.

269.     Upon information and belief, Defendants did not consider or neglected to adequately account for the disproportionate impact the Mask Mandates would have on students who are hard of hearing or have hearing or speech disabilities.

270.     The Mask Mandates disproportionately impact students with special needs. On information and belief, students' special needs may vary greatly. Some special-needs students may

touch the masks frequently, creating more of a risk of contracting a virus. Other special-needs students will simply remove the masks or other face coverings or shields. Still others, because of a disability, may be unable to remove a mask in case of an emergency, such as choking. Children with special needs may find it especially difficult to wear masks but may not be able to take advantage of any of the exceptions in the school districts' Mask Mandates. The mandates thus jeopardize their ability to be in public schools (like all other students) under the Mask Mandates.

271.    Upon information and belief, School Defendants did not consider or neglected to adequately account for the disproportionate impact the Mask Mandates would have on students with special needs.

272.    Upon information and belief, the Mask Mandates have been inconsistently applied and enforced by School Defendants.

273.    School Defendants' Mask Mandates as applied to students violate the Equal Protection Clause of the U.S. Constitution because they deny to many students the equal protection of the law. U.S. Const. amend. XIV § 1.

274.    For the reasons stated above, Plaintiff is entitled under 42 U.S.C. § 1983 to a declaration that the Mask Mandates are unconstitutional under the Equal Protection Clause of the U.S. Constitution; an injunction prohibiting School Defendants from enforcing the Mask Mandates; nominal damages for the harm caused by the School Defendants' Mask Mandates; and attorney fees and costs.

## COUNT V
### (all School Defendants)
### School Defendants' Mask Mandates violate the Equal Protection Clause
### of the Missouri Constitution

275.     Plaintiff hereby incorporates paragraphs 1 - 274 of this Complaint as if fully set forth herein.

276.     Under the Missouri Constitution, "all persons are created equal and are entitled to equal rights and opportunity under the law." Mo. Const. art. § 2.

277.     For similar reasons as alleged above in the paragraphs under Count IV (which paragraphs are incorporated hereto), the Mask Mandates as applied to students violate the Missouri Constitution because the mandates treat students unequally and deny many students equal rights and opportunity under the law.

278.     For the reasons stated above, Plaintiff is entitled to a declaration that the Mask Mandates are unconstitutional under the Equal Protection Clause of the Missouri Constitution; an injunction prohibiting School Defendants from enforcing the Mask Mandates; and nominal damages for the harm caused by the School Defendants' Mask Mandates; and attorney fees and costs.

## COUNT VI
### (all School Defendants)
### School Defendants' Mask Mandates violate the students' right to education without
### due process of law in violation of the U.S. Constitution,
### Missouri Constitution, and state statutes.

279.     Plaintiff hereby incorporates paragraphs 1 - 278 of this Complaint as if fully set forth herein.

280.     In Missouri, students who are no older than 21 years of age have a protected property interest in free public education. Mo. Const. art. IX § 1(a).

281. In Missouri, the right to free public education under Mo. Const. art. IX § 1(a) is a fundamental right. *Concerned Parents v. Caruthersville School Dist. 18*, 548 S.W.2d 554, 560 (Mo. 1977).

282. Any governmental taking of a property interest implicates the right to procedural due process and requires notice and the opportunity to be heard. U.S. Const. amends. V & XIV § 1; Mo. Const. art. I § 10.

283. Under Missouri law, admission to public schools is to be without charge, and instruction to students is to cost them nothing. *Concerned Parents*, 548 S.W.2d at 559.

284. School Defendants acted under color of law in adopting, implementing, and enforcing the Mask Mandates.

285. Upon information and belief, School Defendants' policies imposing mask mandates do not provide for the free distribution of required masks to students.

286. State law requires school boards and districts to undergo certain procedures before they can legally discipline, remove, suspend, or expel as student from public school, including notice to parents or legal guardians and a hearing. *See, e.g.*, §167.161 RSMo.

287. Upon information and belief, each of the School Defendants have their own suspension policies that are supposed to comply with state law.

288. State law sets forth the parameters that school boards and districts must follow with respect to disciplining, restraining, confining, and secluding students.

289. Upon information and belief, each of the School Defendants have their own policies regarding disciplining, restraining, confining, and secluding students.

290.     Upon information and belief, if students do not wear a prescribed mask and have not been given an exemption under School Defendants' mask mandates, the students are not allowed to attend school, or in some cases, they are disciplined or isolated.

291.     Upon information and belief, School Defendants have failed to follow state law in that they have not given adequate notice or a hearing to the parents of students who are not allowed to attend school because of not complying with the Mask Mandates.

292.     Upon information and belief, School Defendants' personnel have forced students to put masks on their faces or have physically placed masks on students without their parents' approval.

293.     Upon information and belief, School Defendants have failed to follow state law regarding medical care, restraints, confinement, and seclusion by forcing students to put masks on their faces, physically placing masks on students without their parents' approval, or disciplining, confining, or isolating students who are not wearing the required masks.

294.     By refusing to allow students without masks to attend school, School Defendants have deprived the students of their right to a free public education in Missouri.

295.     School Defendants have violated the due process clauses of both the U.S. and the Missouri constitution because they have denied maskless students access to public school without adequate notice or hearing, in violation of the students' and their parents and legal guardians' constitutional and statutory rights.

296.     The Mask Mandates lack a compelling interest; are arbitrary, capricious, and vague; are not narrowly tailored to the objectives of the programs or mandates; and deprive students and their parents and legal guardians of fundamental rights secured by the Missouri and U.S. Constitution.

297.    For the reasons stated above, Plaintiff is entitled under 42 U.S.C. § 1983 to a declaration that the Mask Mandates are unconstitutional under the right-to-education clause of the Missouri Constitution and the Due Process Clauses of both the Missouri and U.S. Constitution; an injunction prohibiting School Defendants from enforcing the Mask Mandates; nominal damages for the harm caused by the School Defendants' Mask Mandates; and attorney fees and costs.

### COUNT VII
### (all School Defendants)
### School Defendants' Quarantine Policies are unreasonable, arbitrary, and capricious, § 536.150.1 RSMo.

298.    Plaintiff hereby incorporates paragraphs 1 - 297 of this Complaint as if fully set forth herein.

299.    The NPA challenges the validity of the Quarantine Policies, and seeks a declaration that they are "unreasonable, arbitrary, or capricious." § 536.150.1, RSMo. The Quarantine Policies are not subject to administrative review. *Id.*

300.    School Defendants are "agencies" within the definition § 536.010(2), RSMo. *P.L.S. ex rel. Shelton v. Koster*, 360 S.W.3d 805, 818 (Mo. Ct. App. 2011), *as modified* (Jan. 31, 2012). School Defendants may not exercise their power in an "unreasonable, arbitrary, capricious or unlawful manner." *Magenheim v. Bd. of Educ. of Sch. Dist. of Riverview Gardens*, 347 S.W.2d 409, 417 (Mo. App. 1961).

301.    The Quarantine Policies require unvaccinated students to quarantine after COVID-19 exposure in varying circumstances. The Quarantine Policies are therefore an agency decision that determines "legal rights, duties, or privileges." § 536.150.1, RSMo.

302.    Missouri schoolchildren are not validly subject to the Quarantine Policies because they are "unreasonable, arbitrary, and capricious" and constitute an abuse of discretion. § 536.150.1, RSMo.

303. As stated in Count I, the School Defendants fail to account for the fact that children are less likely to contract or transmit the COVID-19 virus.

304. On information and belief, School Defendants' Quarantine Policies distinguish only between vaccinated and unvaccinated individuals and fail to account for the natural immunity against the COVID-19 virus that those who have already been infected possess.

305. On information and belief, School Defendants failed to consider those factors in applying the Mask Mandates to schoolchildren. They therefore failed to engage in reasoned decision-making, and, as a result, subjected schoolchildren to unnecessary, burdensome, and harmful Quarantine Policies.

306. On information and belief, the quarantine policies have been inconsistently applied and enforced by School Defendants.

307. For those reasons, the Quarantine Policies are unreasonable, arbitrary, and capricious and the schoolchildren should not be subject to them.

**COUNT VIII**
**(all School Defendants)**
**School Defendants' Quarantine Policies are unlawful.**

308. Plaintiff hereby incorporates paragraphs 1 - 307 of this Complaint as if fully set forth herein.

309. Plaintiff challenges the validity of the Quarantine Policies and seeks a declaration that they are "unlawful" and therefore the schoolchildren cannot be lawfully subjected to them. § 536.150.1, RSMo. The Quarantine Policies are not subject to administrative review. *Id.*

310. By law, "[i]t shall be the general duty and responsibility of the Department of Health and Senior Services to safeguard the health of the people in the state and all its subdivisions." § 192.020.1, RSMo.

311. DHSS permits local health authorities to create and enforce only orders "adequate … to prevent the spread of [a] disease and other measures considered by the … local health authority as appropriate disease control measures based upon the disease …." 19 C.S.R. § 20-20.040.2(G).

312. DHSS has not delegated that authority to school districts.

313. Neither the Missouri Constitution nor the General Assembly has granted School Defendants a general police power to enact law for the public welfare.

314. In fact, Missouri statutes that require DHSS to set forth health policy in schools indicate that only DHSS may provide appropriate measures to safeguard the public health. See § 167.181 RSMo (DHSS develops informational brochure on HPV).

315. The Quarantine Policies are not authorized under 19 CSR 20-20.040 due to School Defendants' failure to account for the fact that children are less likely to contract or transmit COVID-19, and the failure to consider any natural immunity acquired when imposing a quarantine.

316. Therefore, the Quarantine Policies are neither "adequate" to prevent the spread of disease nor "appropriate" as a disease control measure among K-12 schoolchildren.

317. Missouri law does not authorize School Defendants to impose Quarantine Policies.

318. School Defendants do not have authority to impose Quarantine Policies for public health reasons.

319. For these reasons, the Quarantine Policies are unlawful orders, and schoolchildren should not be subject to them.

**COUNT IX**
**(all School Defendants)**
**School Defendants' Quarantine Policies violate the Equal Protection Clause of**
**the U.S. Constitution.**

320.     Plaintiff hereby incorporates paragraphs 1 - 319 of this Complaint as if fully set forth herein.

321.     Under the Fourteenth Amendment to the U.S. Constitution, no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1.

322.     A state providing public education, must ensure that education is available to all on equal terms. *Brown v Board of Educ.*, 347 U.S. 483, 493 (1954).

323.     Under color of law, School Defendants adopted, implemented, and are enforcing the Quarantine Policies.

324.     Upon information and belief, as applied to school children, the Quarantine Policies implemented by School Defendants treat similarly situated persons differently without adequate justification.

325.     Upon information and belief, School Defendants' Quarantine Policies create two separate but unequal classes of students: (1) students who've received a COVID-19 vaccine and are considered fully vaccinated and (2) students who have not received a COVID-19 vaccine, regardless of whether an unvaccinated student has previously been infected with the virus or whether the unvaccinated student cannot get the vaccine because of health or religious reasons.

326.     Upon information and belief, School Defendants' Quarantine Policies treat unvaccinated students as second-class citizens and deprive them without adequate justification of their full right to education.

327.     Upon information and belief, School Defendants' Quarantine Policies unreasonably, unfairly, and arbitrarily require unvaccinated students who've had a close contact

with a COVID-19-positive person to stay home from school (and school activities, like sports) and quarantine, even if the unvaccinated student is experiencing no symptoms and even if he or she has previously been infected with COVID-19 (and thus has COVID-19 antibodies). Meanwhile, a vaccinated student who has had a close contact with a COVID-19-positive person does not have to stay home and quarantine and gets to continue going to school (and participating in school activities, like sports), so long as the vaccinated student is experiencing no symptoms.

328.   Upon information and belief, School Defendants' Quarantine Policies unreasonably, unfairly, and arbitrarily treat students who've had close contacts with a COVID-19-positive persons differently depending on whether masks were being worn at the time of the close contact.

329.   Upon information and belief, some School Defendants' Quarantine Policies unreasonably, unfairly, and arbitrarily treat students who've had a close contact with a COVID-19-positive person differently depending on whether the close contact occurred off school property (in which case the student must quarantine) or whether the close contact occurred at school (in which case quarantine is not necessary if the student experiences no symptoms).

330.   Upon information and belief, School Defendants have inconsistently applied and enforced the Quarantine Policies.

331.   School Defendants' Quarantine Policies violate the Equal Protection Clause of the U.S. Constitution because they deny to many students the equal protection of the law. U.S. Const. amend. XIV § 1.

332.   For the reasons stated above, Plaintiff is entitled under 42 U.S.C. § 1983 to a declaration that the Quarantine Policies are unconstitutional under the Equal Protection Clause of the U.S. Constitution; an injunction prohibiting School Defendants from enforcing the Quarantine

Policies; nominal damages for the harm caused by the School Defendants' Quarantine Policies; and attorney fees and costs.

## COUNT X
### (all School Defendants)
### School Defendants' Quarantine Policies violate the Equal Protection Clause of the Missouri Constitution.

333.     Plaintiff hereby incorporates paragraphs 1 - 332 of this Complaint as if fully set forth herein.

334.     Under the Missouri Constitution, "all persons are created equal and are entitled to equal rights and opportunity under the law." Mo. Const. art. § 2.

335.     For similar reasons as alleged above in paragraphs of Count IX (which paragraphs are incorporated hereto), the School Defendants' Quarantine Policies violate the Missouri Constitution because they arbitrarily treat students differently and deny many students equal rights and opportunity under the law.

336.     For the reasons stated above, Plaintiff is entitled to a declaration that the Quarantine Policies are unconstitutional under the Equal Protection Clause of the Missouri Constitution; an injunction prohibiting School Defendants from enforcing the Quarantine Policies; nominal damages for the harm caused by the policies; and attorney fees and costs.

## COUNT XI
### (all School Defendants)
### School Defendants' Quarantine Policies violate the students' right to education without due process of law in violation of both the U.S. Constitution and the Missouri Constitution.

337.     Plaintiff hereby incorporates paragraphs 1 - 336 of this Complaint as if fully set forth herein.

338.     In Missouri, students who are no older than 21 years of age have a protected property interest in free public education. Mo. Const. art. IX § 1(a).

339.     In Missouri, the right to free public education under Mo. Const. art. IX § 1(a) is a fundamental right. *Concerned Parents v. Caruthersville School Dist. 18*, 548 S.W.2d 554, 560 (Mo. 1977).

340.     Any governmental taking of a property interest implicates the right to procedural due process and requires notice and the opportunity to be heard. U.S. Const. amends. V & XIV § 1; Mo. Const. art. I § 10.

341.     Acting under color of law, School Defendants adopted, implemented, and are enforcing the Quarantine Policies.

342.     Upon information and belief, School Defendants' Quarantine Policies deprive quarantined students who experience no symptoms of their right to education because they unreasonably, unfairly, and arbitrarily prohibit unvaccinated students who've had a close contact with a COVID-19-posivite person from attending school or participating in school activities.

343.     Upon information and belief, School Defendants do not provide adequate notice or a hearing to a student, or to his or her parents or legal guardians, before mandating that the student quarantine and stay home from school and school activities.

344.     By prohibiting quarantined students who experience no symptoms from attending school and participating in school activities, School Defendants have deprived students of their constitutional right to a free public education in Missouri.

345.     School Defendants have violated the due process clauses of both the U.S. Constitution and the Missouri Constitution because they have denied quarantined students access to public school without adequate notice or hearing, in violation of the students' and their parents' constitutional and statutory rights.

346.    For the reasons stated above, Plaintiff is entitled under 42 U.S.C. § 1983 to a declaration that the Quarantine Policies are unconstitutional under the right-to-education clause of the Missouri Constitution and the Due Process Clauses of both the Missouri and U.S. Constitution; an injunction prohibiting School Defendants from enforcing the Quarantine Policies; nominal damages for the harm caused by the School Defendants' Quarantine Policies; and attorney fees.

### COUNT XI
### (all School Defendants)
### School Defendants' mask-exemption policies are unlawful and invalid because School Defendants did not follow proper procedure in implementing the policies.

347.    Plaintiff hereby incorporates paragraphs 1 - 346 of this Complaint as if fully set forth herein.

348.    School boards are agencies under the Missouri Administrative Procedure Act, § 536.010 et al. *See State ex rel. Yarber v. McHenry*, 915 S.W.2d 325, 327 (Mo. 1995).

349.    Upon information and belief, the Boards of Education of School Defendants did not approve by vote the respective mask-exemption.

350.    Upon information and belief, Defendant Schools notified families about their plans for exemptions to their respective mask mandates just days before school started.

351.    Upon information and belief, Defendant Schools violated Missouri's Sunshine Law/Open Meetings Law, sections 610.010 to 610.035 RSMo, because proper notice was not given to the public and the mask-exemption policies were instituted without proper board votes.

352.    Upon information and belief, implementation of a mask-exemption policy without approval by the board of education violates each of the School Defendants' district policies.

353.    Having been implemented without proper board approval, School Defendants' policies regarding exemptions to the mask mandates are unlawful and invalid.

354.    For the reasons stated above, Plaintiff is entitled under section 610.027 RSMo to a declaration that the mask-exemption policies are invalid; an injunction preventing School Defendants from enforcing the mask-exemption policies; statutory damages; and attorney fees and costs.

### COUNT XII
**(Defendants ESSD, KSD, LPS, NKC Schools, & SSD)**
**Mask-exemption policies in certain school districts are ultra vires, because School Defendants have no authority to demand students and their families to disclose private medical information.**

355.    Plaintiff hereby incorporates paragraphs 1 - 354 as if fully set forth herein.

356.    Upon information and belief, to get a medical exemption from the Mask Mandates, Defendants ESSD, KSD, LPS, NKC Schools, and SSD are requiring parents and legal guardians to provide physician statements with the student's clearly identified and diagnosed medical conditions or disabilities and reasons that the student cannot safely wear a mask.

357.    These School Defendants have no authority to require such personal and specific information to be disclosed by a student or family in order for the student to obtain a medical exemption from the Mask Mandates.

358.    Although no Missouri statute could be found that specifies exemptions to mask mandates, an analogy to § 167.181 RSMo is appropriate. Under that statute, Missouri school children are required to receive certain immunizations, yet religious and medical exemptions are permitted. "In cases where any such objection is for reasons of medical contraindications, a statement from a duly licensed physician must also be provided to the school administrator." The regulations for this statute provide further explanation as to the sufficiency of the medical-exemption request. A student seeking a medical exemption from a required immunization must submit a "signed certification by a licensed doctor of medicine (MD), doctor of osteopathy (DO), or his or her designee indicating that either [1] the immunization would seriously endanger the

student's health or life or [2] the student has documentation of disease or laboratory evidence of immunity to the disease." 19 CSR 20-28.010.

359.     Upon information and belief, these School Defendants are requiring parents and legal guardians to provide more personal information for a medical exemption to the Mask Mandates than School Defendants legally could require for a medical exemption to the immunization requirements.

360.     No law authorizes School Defendants to interrogate students regarding specifics of their medical condition that requires an exemption to the Mask Mandate. Such interrogation invades the right of privacy and intrudes into the physician-patient relationship.

361.     Defendants' policies regarding exemptions to the Mask Mandates therefore are unlawful as ultra vires.

### COUNT XIII
### (Defendants ESSD, KSD, LPS, NKC Schools, & SSD)
### Mask-exemption policies in certain school districts are unreasonable and unconstitutional because they violate students' rights to privacy and personal autonomy.

362.     Plaintiff incorporates paragraphs 1 - 361 as is fully set forth herein.

363.     School Defendants acted under color of law in implementing and enforcing the mask-exemption policies.

364.     Upon information and belief, to get a medical exemption from the Mask Mandates, Defendants ESSD, KSD, LPS, NKC Schools, and SSD are requiring parents and legal guardians to provide physician statements with the student's clearly identified and diagnosed medical conditions or disabilities and reasons that the student cannot safely wear a mask.

365.     By requiring such personal and medical information, these School Defendants have deprived students of their right to privacy, personal autonomy, and bodily integrity secured by the U.S. Constitution. U.S. Const. amend 14 § 1.

366.     The right to privacy protects the students' personal autonomy and bodily integrity from intrusion by the government, and it protects the disclosure of personal and private information, such as a person's medical history.

367.     The mask-exemption requirements in the school districts of ESSD, KSD, LPS, NKC Schools, and SSD therefore violate students' right to privacy.

368.     For the reasons stated above, Plaintiff is entitled under 42 U.S.C. § 1983 to a declaration that the mask-exemption policies are unconstitutional under the U.S. Constitution; an injunction prohibiting School Defendants from enforcing their mask-exemption policies; and nominal damages for the harm caused by the School Defendants' mask-exemption policies; and attorney fees and costs.

### COUNT XIV
### (Defendants ESSD, KSD, LPS, NKC Schools, & SSD)
### The mask-exemption policies in ESSD, KSD, LPS, NKC Schools, and SSD are unreasonable, vague, ambiguous, and constitute an abuse of discretion.

369.     Plaintiff incorporates paragraphs 1 - 368 as if fully set forth herein.

370.     Upon information and belief, Defendants ESSD, KSD, LPS, NKC Schools, and SSD have failed to provide parents and legal guardians with clear guidelines as to what information or statement from a physician would be acceptable for the defendants to grant medical exemptions from the Mask Mandates.

371.     Upon information and belief, even when parents and guardian believed they'd submitted physician statements with the requisite information, including with specific diagnoses and reasons why students could not safely wear a mask, School Defendants denied the requests for medical exemptions.

372.     Even if the mask-exemption requirements in these school districts were constitutional (which they are not) denials of exemption requests when students have provided the

requested information violate the defendants' own mask-exemption policies and are abuses of discretion.

373.    For the reasons stated above, the mask-exemption policies in ESSD, KSD, LPS, NKC Schools, and SSD are unreasonable, vague, ambiguous, and constitute an abuse of discretion.

## COUNT XV
### (all School Defendants)
### School Defendants' mask-exemption policies violate the Equal Protection Clause of the U.S. Constitution because they create two separate and unequal classes of students.

374.    Plaintiff incorporates paragraphs 1 - 373 as if fully set forth herein.

375.    A state providing public education, must ensure that education is available to all on equal terms. *Brown v Board of Educ.*, 347 U.S. 483, 493 (1954).

376.    The legal system recognizes educations' impact upon the social, intellectual, and psychological well-being of the child**,** *Plyler v Doe*, 457 U.S. 202, 222 (1982), and the benefits the child derives from the socialization process in the regular classroom. *Hairston v Drosick*, 423 F Supp 180, 183 (S.D.W.Va. 1976).

377.    School Defendants acted under color of law in implementing and enforcing the policies regarding exemptions to the Mask Mandates.

378.    Upon information and belief, under School Defendants' mask-exemption policies, if exemptions are given to students, the unmasked students are unfairly segregated from their peers and deprived of the socialization process in the classroom.

379.    Upon information and belief, under School Defendants' mask-exemption policies, a student with an approved exemption to the Mask Mandates is essentially isolated from the rest of the classmates because the unmasked student may have plexiglass around his or her desk and must sit a certain distance away from other students in the classroom, cannot work in groups with other students unless the unmasked student maintains a certain distance, cannot go into the

restroom with other students, and must walk a certain distance away from others in the hallways. In short, School Defendants treat mask-exempted students like lepers.

380.     Upon information and belief, the mask-exempted students have a completely different school experience than that of the masked students, resulting in two separate and unequal classes of students created by School Defendants.

381.     School Defendants' mask-exemption policies violate the Equal Protection Clause of the U.S. Constitution because they create two separate and unequal classes of students.

382.      For the reasons stated above, Plaintiff is entitled under 42 U.S.C. § 1983 to a declaration that the mask-exemption policies are unconstitutional under the Equal Protection Clause of the U.S. Constitution; an injunction prohibiting School Defendants from enforcing their mask-exemption policies; nominal damages for the harm caused by the School Defendants' mask-exemption policies; and attorney fees and costs.

## COUNT XVI (all School Defendants)
### School Defendants' mask-exemption policies violate the Equal Protection Clause of the Missouri Constitution because they create two separate and unequal classes of students.

383.     Plaintiff hereby incorporates paragraphs 1- 382 of this Complaint as if fully set forth herein.

384.     Under the Missouri Constitution, "all persons are created equal and are entitled to equal rights and opportunity under the law." Mo. Const. art. § 2.

385.     For similar reasons as alleged above in the paragraphs for Count Sixteen (which paragraphs are incorporated hereto), School Defendants' mask-exemption policies violate the Missouri Constitution because they treat mask-exempted students unequally and deny them equal rights and opportunity under the law.

386.    For the reasons stated above, Plaintiff is entitled to a declaration that the mask-exemption policies are unconstitutional under the Equal Protection Clause of the Missouri Constitution; an injunction prohibiting School Defendants from enforcing their mask mandate and exemption policies; nominal damages for the harm caused by the policies; and attorney fees and costs.

## COUNT XVII
### (Defendants ESSD, KSD, LPS, NKC Schools, & SSD)
### The mask-exemption policies in ESSD, KSD, LPS, NKC Schools, and SSD unlawfully discriminate against students with disabilities under federal law.

387.    Plaintiff incorporates paragraphs 1 - 386 as if fully set forth herein.

388.    Both the Individuals with Disabilities Education Act (IDEA) and Section 504 of the Rehabilitation Act of 1973, are federal laws that require school districts to provide eligible disabled students with a Free Appropriate Public Education, or FAPE.

389.    Under IDEA, Individual Education Programs (IEPs) offer special education services tailored to a child's unique needs to ensure participation in the general curriculum.

390.    Section 504 of the Rehabilitation Act of 1973 aims to remove barriers to students with disabilities in public schools and to protect kids from discrimination in school settings.

391.    Students with disabilities who cannot wear a mask or cannot safely wear a mask because of their disability in accordance with CDC guidelines should not be required to wear one.

392.    Defendants ESSD, KSD, LPS, NKC Schools, and SSD acted under color of law in implementing and enforcing the mask-exemption policies.

393.    Upon information and belief, Defendants ESSD, KSD, LPS, NKC Schools, and SSD deny mask exemptions to students with disabilities, who have IEPs under IDEA or qualify for services under Section 504.

394.     Upon information and belief, by denying mask exemptions to students with disabilities, Defendants ESSD, KSD, LPS, NKC Schools, and SSD unlawfully discriminate against such students, exacerbate their disabilities, and interfere the children's ability to learn in the general classroom.

395.     For the reasons stated above, Plaintiff is entitled under 42 U.S.C. 1983, IDEA, and Section 504, to a declaration that Defendants ESSD, KSD, LPS, NKC Schools, and SSD unlawfully discriminate against students with disabilities under IDEA and Section 504; an injunction preventing these defendants from continuing to do so; nominal damages for the harm caused by these defendants, and attorney fees.

### COUNT XVIII
### (Defendants ESSD, KSD, LPS, NKC Schools, and SSD)
### The mask-exemption policies of ESSD, KSD, LPS, NKC Schools, and SSD cause school personnel to engage in the unauthorized practice of medicine in violation of § 334.010 RSMo.

396.     Plaintiff hereby incorporates paragraphs 1-395 of this Complaint as if fully set forth herein.

397.     Under § 334.010 RSMo, it is unlawful for any person not now a registered physician within the meaning of the law to practice medicine.

398.     Upon information and belief, under the mask-exemption policies in Defendants ESSD, KSD, LPS, NKC Schools, and SSD, school personnel (including superintendents, other administrators, and school nurses) make the determination whether the wearing of a mask would endanger the health of a student or whether a mask can safely be worn by a student.

399.     Upon information and belief, under the mask-exemption policies in ESSD, KSD, LPS, NKC Schools, and SSD, school superintendents, other administrators, and nurses decide

whether they agree or disagree with the student's physician's medical judgment that the student needs to be exempted from the Mask Mandates because of medical reasons.

400.    Upon information and belief, school personnel (including superintendents, other administrators, and school nurses) are not registered physicians within the meaning of the law and are not qualified to engage in the practice of medicine by determining whether students' have medical reasons why mask wearing could endanger their health.

401.    Because the mask-exemption policies in ESSD, KSD, LPS, NKC Schools, and SSD give school personnel (including superintendents, other administrators, and school nurses) the authority to make medical-exemption determinations and to discount, second-guess, and override the determinations and recommendations of registered physicians, such policies are unlawful and invalid because they cause school personnel to unlawfully engage in the practice of medicine.

**COUNT XIX**
**(all School Defendants)**
**School Defendants' Mask Mandates violate the First Amendment to the U.S. Constitution because they allow no exemptions for religious beliefs or conscientious objections.**

402.    Plaintiff hereby incorporates paragraphs 1 - 401 of this Complaint as if fully set forth herein.

403.    Under the First Amendment to the U.S. Constitution, which is applicable to the States through the Fourteenth Amendment, government shall not prohibit the free exercise of religion. U.S. Const. amend I.

404.    Under E*mployment Div.* v. *Smith*, 494 U. S. 872 (1990), laws that incidentally burden religion ordinarily are not subject to strict scrutiny so long as the laws are neutral and generally applicable. *Fulton v. City of Philadelphia*, 593 U.S. ___, slip op. at 5 (2021).

405.     However, when laws or government policies that are not neutral or generally applicable burden a person's religious exercise, then strict scrutiny applies, and the government must demonstrate a compelling interest that is narrowly tailored further that interest. *Id.*

406.     Upon information and belief, School Defendants' Mask Mandates are not generally applicable because they give school administrators discretion on whether to permit exemptions to mask wearing. Furthermore, School Defendants allow exemptions for a number of reasons. For example, upon information and belief, medical exemptions are allowed, student athletes don't have to wear masks when playing sports, and students don't have to wear masks when participating in physical education, band, or choir.

407.     Upon information and belief, however, School Defendants do not allow exemptions to the Mask Mandates for religious reasons or conscientious objections.

408.     Government fails to act neutrally when it proceeds in a manner intolerant of religious beliefs. *Id.*

409.     School Defendants lack a compelling interest for denying exemptions to students who object to the Mask Mandates based on sincerely held religious beliefs or conscientious objections, and the Mask Mandates are not narrowly tailored to achieve such compelling interest.

410.     School Districts' Mask Mandates violate the First Amendment because they infringe on rights to free exercise of religion and rights of conscience.

411.     For the reasons stated above, Plaintiff is entitled under 42 U.S.C. § 1983 to a declaration that the mask-exemption policies are unconstitutional under the First Amendment of the U.S. Constitution; an injunction prohibiting School Defendants from enforcing their mask-exemption policies without religious and conscience exemptions; nominal damages for the harm caused by the School Defendants' mask-exemption policies; and attorney fees and costs.

## COUNT XX
## (all School Defendants)
## School Defendants' Mask Mandates violate the Missouri Religious Freedom Restoration Act because they allow no exemptions for religious beliefs.

412.    Plaintiff hereby incorporates paragraphs 1 - 411 of this Complaint as if fully set forth herein.

413.    Under the Missouri Religious Freedom Restoration Act, § 1.302 RSMo:

a governmental authority may not restrict a person's free exercise of religion, unless: (1) The restriction is in the form of a rule of general applicability, and does not discriminate against religion, or among religions; and (2) The governmental authority demonstrates that application of the restriction to the person is essential to further a compelling governmental interest, and is not unduly restrictive considering the relevant circumstances.

414.    Upon information and belief, School Defendants' Mask Mandates are not generally applicable, and they discriminate against religion because the Mask Mandates do not provide exemptions for religious beliefs.

415.    Upon information and belief, School Defendants' Mask Mandates give school administrators broad discretion on whether to permit exemptions to mask wearing. Furthermore, School Defendants allow exemptions for a number of reasons. For example, upon information and belief, medical exemptions are allowed, student athletes don't have to wear masks when playing sports, and students don't have to wear masks when participating in physical education, band, or choir.

416.    Upon information and belief, however, School Defendants do not allow exemptions to the Mask Mandates for religious reasons.

417.    School Defendants cannot demonstrate (1) a compelling governmental interest for forcing a student to wear a mask when the student has (or whose parents or legal guardians have) a religious reason for seeking an exemption and (2) that the Mask Mandates are not unduly restrictive.

418. School Defendants' Mask Mandates violate Missouri's Religious Freedom Restoration Act because they infringe on the free exercise of religion by denying exemptions to students who seek exemptions for religious reasons.

419. For the reasons stated above, Plaintiff is entitled to a declaration that the mask-exemption policies are unconstitutional under Missouri's Religious Freedom Restoration Act; an injunction prohibiting School Defendants from enforcing their mask-exemption policies; nominal damages for the harm caused by the School Defendants' mask-exemption policies; and attorney fees and costs.

WHEREFORE, Plaintiff prays this Court to:

• Declare all Defendants' Mask Mandates and the School Defendants' mask-exemption policies and Quarantine Policies to be unlawful, unreasonable, arbitrary, capricious, abuses of discretion, and unconstitutional under the U.S. Constitution and the Missouri Constitution, as alleged above;

• Enter an injunctive order in Plaintiff's favor and against all Defendants preventing all Defendants from enforcing their Mask Mandates as applied to school children;

• Enter an injunctive order in Plaintiff's favor and against School Defendants preventing them from enforcing their Quarantine Policies and Mask-Exemption Policies;

• Enter a judgment on all counts in Plaintiff's favor for nominal damages, together with prejudgment and post-judgment interest;

• Grant attorney fees to Plaintiff under 42 U.S.C. §§ 1983, 1988, IDEA, Section 504, 29 U.S.C. § 794(b), and § 610.027 RSMo, as well as costs herein incurred; and

• For such other and further relief as the Court deems just and proper under the circumstances.

Respectfully submitted,

PATHGUIDE LAW LLC


    //KEVIN R. CORLEW//
Kevin R. Corlew, Mo Bar: #59324
200 NW Englewood Rd Ste A
Gladstone, MO 64118
816.710.6900 (Telephone)
Kevin.Corlew@PathGuideLaw.com

ATTORNEY FOR PLAINTIFFS