# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

NORTHLAND PARENT ASSOCIATION, )
)
    Plaintiff, )
)
v. )
) Case No. 21-CV-00623-FJG
)
EXCELSIOR SPRINGS SCHOOL )
DISTRICT # 40, ET AL., )
)
    Defendant. )
)

# ORDER

Currently pending before the Court is Plaintiff's Motion for Preliminary Injunction (Doc. # 40) and Defendants' Motion to Dismiss (Doc. 48), Plaintiff's Motion to Amend Complaint (Doc. # 58), Defendants' Motion for Leave to File Excess Pages (Doc. # 68), the Parties' Joint Motion for Extension of Deadlines (Doc. # 74) and plaintiff's Substitute Motion for Leave to Amend Complaint (Doc. # 76).

## I. BACKGROUND

The Northland Parent Association ("NPA") is a Missouri nonprofit corporation. The Complaint alleges that it is made up of hundreds of parents, guardians, families and taxpayers in Clay and Platte Counties in Missouri who "inform themselves, educate the public, and advocate for the health and social, emotional, and academic wellbeing of students in the Northland area of the metropolitan area of Kansas City." (Complaint, ¶ 2). The NPA brought suit against seven different school districts and their school

boards[1]. The Court will refer to these defendants as the "School Defendants." Plaintiff also sued the Mayor and City Council of Kansas City and the Mayor and City Council of North Kansas City. Before the beginning of the current school year, the School Defendants instituted mask mandates, various exemptions to the mandates and quarantine policies. Plaintiff's Complaint asserts that in implementing the mask mandates defendants failed to consider certain aspects and factors regarding the masking of children and neglected the comments and information provided by members of the electorate who opposed the mandates. Plaintiff asserts that the mask mandates are unconstitutional, unlawful, unreasonable, arbitrary and capricious and involve an abuse of discretion. The Court held oral argument on plaintiff's Motion for Preliminary Injunction on November 17, 2021.

## II. STANDARDS

**A. Motion to Dismiss – Fed.R.Civ.P. 12(b)(1)**

In Driesen v. Smith, No. C13–4037–MWB, 2014 WL 24234 (N.D.Iowa Jan. 2, 2014), aff'd, 584 Fed.Appx. 292 (8th Cir. 2014), the Court explained the standards for Fed.R.Civ.P. 12(b)(1).

> A motion attacking the court's subject matter jurisdiction is governed by Federal Rule Civil Procedure 12(b)(1). A Rule 12(b)(1) motion can either attack the complaint's claim of jurisdiction on its face or it can attack the factual basis for jurisdiction.... In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction.... If the [defendant] wants to make a factual attack on the jurisdictional allegations of the complaint, the court may receive competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute.

---

[1] The Districts and defendants include: Excelsior Springs, Kearney, Liberty, North Kansas City, Park Hill, Platte County and Smithville.

Id. at * 6 (internal citations omitted). "When addressing a Rule 12(b)(1) motion the Court can, without converting the motion into one for summary judgment, make credibility determinations and [ ] weigh conflicting evidence in resolving the motion." Zarling v. Abbott Laboratories, No. CV 21-23 (MJD/BRT), 2021 WL 2551438, at *4 (D. Minn. June 22, 2021)(internal citations and quotations omitted).

**B. Motion to Dismiss – Fed.R.Civ.P. 12(b)(6)**

To survive a motion to dismiss under 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662,129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A pleading that merely pleads "labels and conclusions" or a "formulaic recitation" of the elements of a cause of action, or "naked assertions" devoid of "further factual enhancement" will not suffice. Id. (quoting Twombly). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. Under Fed. R. Civ. P. 12(b)(6) we must accept the plaintiff's factual allegations as true and grant all reasonable inferences in the plaintiff's favor. Phipps v. FDIC, 417 F.3d 1006, 1010 (8th Cir. 2005).

**C. Motion to Amend – Fed.R.Civ.P. 15(a)**

Federal Rule of Civil Procedure Rule 15(a) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15(a) further states that "[t]he court should freely grant [such] leave when justice so requires." Id. This standard is construed liberally but "plaintiffs do not have an absolute or automatic right to amend." United States ex rel. Lee v. Fairview Health Sys., 413 F.3d 748, 749 (8th Cir. 2005) (citing Meehan v. United Consumers Club Franchising Corp., 312 F.3d 909, 913 (8th Cir. 2002)). A

district court may appropriately deny the movant leave to amend if "there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc., 406 F.3d 1052, 1065 (8th Cir. 2005) (internal quotation marks and citations omitted). When a defendant alleges that amendment is futile, the Court considers if "the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." Zutz v. Nelson, 601 F.3d 842, 850 (8th Cir. 2010). Accordingly, this Court asks "whether the proposed amended complaint states a cause of action under the Twombly pleading standard outlined above." Id. at 850-51.

Sheng Intern. Co. Ltd. v. Prince Americas, LLC., No. 8:20-CV-124, 2021 WL 5416227, at *2 (D. Neb. Nov. 19, 2021).

## III. DISCUSSION

### A. Motion to Dismiss

Defendants argue that plaintiff's Complaint cannot proceed for two reasons: 1) NPA lacks standing to assert the majority of its claims because the Complaint alleges no actual injury to its members' children to support the majority of its legal theories and plaintiff does not have standing under the Associational Standing doctrine and 2) all of the counts asserted fail to state a claim upon which relief can be granted.

> "[S]tanding is a jurisdictional prerequisite that must be resolved before reaching the merits of a suit." City of Clarkson Valley v. Mineta, 495 F.3d 567, 569 (8th Cir. 2007). "In essence, the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). "[S]tanding imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Article III. This is the threshold question in every federal case, determining the power of the court to entertain suit." Id. The standing inquiry requires the plaintiff to allege "some threatened or actual injury" traceable to the defendant, such that the plaintiff has "such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial power on his behalf." Id. at 498-99, 95 S.Ct. 2197. To demonstrate Article III standing, a plaintiff must show each of the

following: "(1) an injury in fact; (2) a causal connection between the injury and the challenged conduct; and (3) the likelihood that a favorable decision by the court will redress the alleged injury." Iowa League of Cities v. Env't Prot. Agency, 711 F.3d 844, 869 (8th Cir. 2013). An injury in fact sufficient to confer standing must be concrete and particularized, as well as actual and imminent, as opposed to hypothetical. Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 180-81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000); Warth, 422 U.S. at 501, 95 S.Ct. 2197 (requiring a "distinct and palpable injury").

Organization for Black Struggle v. Ashcroft, 493 F. Supp. 3d 790, 797 (W.D. Mo. 2020).

> An association . . ."has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc., 517 U.S. 544, 553, 116 S.Ct. 1529, 134 L.Ed.2d 758 (1996) (quoting Hunt v. Wash. State Adver. Comm'n, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)).

Red River Freethinkers v. City of Fargo, 679 F.3d 1015, 1022 (8th Cir. 2012). "Article III standing must be decided first by the court and presents a question of justiciability; if it is lacking, a federal court has no subject-matter jurisdiction over the claim." Higgins Elec., Inc. v. O'Fallon Fire Prot. Dist., No. 15-1222, 2016 WL 690849 (8th Cir. Feb. 22, 2016)(quoting Miller v. Redwood Toxicology Lab., Inc., 688 F.3d 928, 934 (8th Cir.2012)). In their Motion to Dismiss and during oral argument on the Motion for Preliminary Injunction, defendants argue that NPA must assert allegations establishing that it has actual members who have standing to bring suit in their own right.

**1. NPA Does Not Allege that Any of its Members are English Language Learners, Have Hearing or Speech Impairments or Have Other Special Needs (Counts 4, 5 and 17).**

Defendants argue that plaintiff did not allege that any of its members are English Language Learners, have hearing or speech impairments or other special needs.

**2. NPA Does not Allege that Any of its Members Have Children Who Have Been Subjected to Discipline or Refused Entry to School for Not Wearing a Mask (Count 6).**

NPA has not alleged that any children of its members have been subjected to discipline or have been refused entry or denied access to school for refusing to wear a mask to school.

**3. NPA Does Not Allege that Any of its Members Have Children Who Have Been Subjected to a Quarantine (Counts 7, 8, 9, 10 and 11).**

Defendants note that plaintiff did not allege that any of its members or their children have ever been or will be subject to quarantine. Defendants also argue that NPA has not alleged that any of its members have sought, been denied or suffered any injury related to the Districts' mask exemption policies. Defendants state that NPA has asserted that the Districts' quarantine policies are unreasonable, arbitrary, unlawful, violate the Equal Protection clause and deprive student's right to education without due process. But defendants state that in order to establish standing, NPA must allege that any of its members or their children were in fact injured by the quarantine policies, which defendants argue they have not done.

**4. NPA Does Not Allege that Any of its Members Have Sought, Been Denied or Suffered an Injury from the Districts' Mask Exemption Policies (Counts 12 -19).**

Defendants state that the NPA challenged the Districts' mask exemption policies on a number of bases, but they have failed to plead that any of its members or their children have a medical condition that would warrant an exemption, have applied for a medical exemption or been denied a medical exemption.

### 5. NPA Does Not Allege that Any of its Members Have Religious Beliefs Against Wearing Face Masks (Counts 20, 21).

Defendants state that NPA has failed to assert that any of its members or their children have a bona fide religious belief that would warrant an exemption, have applied for a religious exemption or been denied a religious exemption.

### 6. Plaintiff's Opposition to Motion to Dismiss

Plaintiff argues in opposition to the Motion to Dismiss that general factual allegations are sufficient at the pleading stage to confer standing in an action for declaratory relief. Plaintiff states "general factual allegations suffice at the pleadings stage, and the Court presumes on a motion to dismiss that general allegations embrace those specific facts that are necessary to support the claim." (Plaintiff's Suggestions in Opposition, pp. 3-4). Additionally, plaintiff states that standing does not require the identity of individual members and such required disclosure could violate the members' First Amendment right of association. Plaintiff also states that because it is asking for declaratory relief under the Declaratory Judgment Act, no actual wrong needs to have been committed or loss occurred in order to sustain the action.

The Court disagrees with plaintiff's assertions. "To survive a motion to dismiss, a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.' Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Although a complaint need not contain 'detailed factual allegations,' it must contain facts with enough specificity 'to raise a right to relief above the speculative level.' Id. at 555, 127 S.Ct.1955." LeMaster v. United States, 521 F.Supp.3d 815, 821 (D.Minn. 2021). As the Court in LeMaster noted, "[w]hen considering a motion to dismiss under Rule 12(b)(6), the Court accepts the facts alleged in the complaint as

true, and views the allegations in the light most favorable to the plaintiff. . . .However, the Court need not accept as true wholly conclusory allegations or legal conclusions couched as factual allegations." Id. (internal citations omitted). With regard to plaintiff's assertion that standing does not require the identity of individual members, plaintiff has not asserted a reason why individual members would need to remain anonymous or why they could not be identified by their initials. Indeed, the court's Local Rules require the use of initials when the names of minors are used in pleadings. The Court also disagrees with plaintiff's assertion that because it is seeking declaratory relief, it is not required to show that a wrong was committed or a loss occurred in order to establish standing.

In McGowen, Hurst, Clark & Smith P.C. v. Commerce Bank, 11 F.4th 702 (8th Cir. 2021), the Court stated:

> Plaintiffs seeking a declaratory judgment under 28 U.S.C. § 2201 must meet these same Article III requirements. See Maytag Corp. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., 687 F.3d 1076, 1081 (8th Cir. 2012); California v. Texas, —— U.S. ——, 141 S. Ct. 2104, 2115, —— L.Ed.2d —— (2021). But due to the nature of declaratory judgments, "the difference between an abstract question and an Article III case or controversy 'is necessarily one of degree.' " Maytag Corp., 687 F.3d at 1081 (quoting Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941)). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007) (quoting Md. Cas. Co., 312 U.S. at 273, 61 S.Ct. 510).

Id. at 709.

The Court finds that plaintiff has failed to meet the Article III standing requirements. "The existence of a plaintiff's Article III standing is a jurisdictional

prerequisite, and we will not reach the merits if the plaintiff does not have standing."

McGowen, 11 F.4th at 708.

> A plaintiff seeking federal jurisdiction must establish the three Article III standing requirements: "(1) the plaintiff must have suffered an injury in fact, (2) there must be a causal connection between the injury and the conduct complained of, and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Sanzone, 954 F.3d at 1046 (cleaned up). There is an injury in fact if the alleged injury is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Id. (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

Id. at 709.

As defendants noted above, plaintiff has failed to allege that any of its members or their children are English Language Learners, have hearing or speech impairments or have special needs. Plaintiff has not alleged that any of its members or their children have been or were subjected to quarantine as a result of defendants' quarantine policies, plaintiff has not alleged that any of its members or their children sought, were denied or suffered an injury as a result of defendants' mask exemption policies, plaintiff has not alleged that any of its members or their children have bona fide religious beliefs against wearing face masks, applied for a religious exemption or were denied an exemption from any of the School Districts. Thus the Court finds that plaintiff has failed to show that its claimed injuries are concrete and particularized and has only shown that its injuries are conjectural and hypothetical. Thus, the Court finds that plaintiff has failed to carry its burden to show that it has standing to assert the claims in the Complaint.

**7. Associational Standing**

Defendants also state that plaintiff cannot assert associational standing. "It is well-settled that, in limited circumstances, an association has standing to seek injunctive

9

relief on behalf of its members." Midwest Disability Initiative v. JANS Enterprises, Inc., 929 F.3d 603, 609 (8th Cir. 2019). Associational standing is shown when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)." Kuehl v. Sellner, 887 F.3d 845, 851 (8th Cir. 2018). As discussed above, defendants argue that NPA has not shown that its members would have standing to sue in their own right for several of the claims it has asserted. Additionally, defendants argue that NPA has not satisfied the third prong of the test for associational standing – the claims of the Association cannot be prosecuted without substantial participation from the individual members on whose behalf the claims are brought. Defendants state that the legal theories that plaintiff seeks to present will all require individualized examination of issues specific to the plaintiffs. For example, claims asserting exemptions based on a student's medical needs, disability or religious views will all require fact intensive individual inquiries.

With regard to the Associational Standing argument, NPA argues that it meets the first prong of the associational standing test because it need not establish that all of its members would have standing, as long as it can show that "any one of them" would have standing. Warth v. Seldin, 422 U.S. 490, 511 (1975). Plaintiff argues that members of the NPA have children in each of the school districts named in the Complaint who have been harmed by the mask mandates. With regard to the third prong, plaintiff states that no individual member will be indispensable and individual member participation will

not be required in order to show that the School Defendants' mask mandates are unlawful.

With regard to the first prong of the test, NPA did not assert in its Complaint that it had individual members whose children had been impacted in various ways by the mask mandates and the exemptions. For example, the NPA failed to allege that: "1) that any of NPA's members or their children have a medical condition that would warrant an exemption under any of the School Districts' Mask Mandates; 2) that any of NPA's members or their children have applied for a medical exemption from any of the School Districts' Mask Mandates; or (3) that any of NPA's members or their children have been denied a medical exemption from any of the School Districts' Mask Mandates." The NPA failed to show that any of its members have been affected in other ways by the School Defendants' policies or could bring suit in their own right. Defendants note that "in the absence of such allegations, NPA (whose standing is derivative of its individual members) does not have standing to assert such claims. (Defendants' Reply Suggestions, pp. 6-7). The Court agrees and finds that plaintiff has failed to meet the first prong of the associational standing test. The Court will assume that NPA meets the second prong of the Associational Standing test - that the claims that the NPA seeks to assert are in alignment with the organization's purposes.

The third factor of the associational standing test is that "neither the claim asserted, nor the relief requested requires the participation of individual members in the lawsuit." Mo. Protection and Advocacy Servs., Inc. v. Carnahan, 499 F.3d 803, 809 (8th Cir. 2007). As the Court noted in Separation of Hinduism From Our Schools v. Chicago Public Schools, No. 20C4540, 2021 WL 3633939 (N.D.Ill. Aug. 17, 2021):

> One element of associational standing is that "neither the claims asserted, nor the relief requested, requires the participation of individual members in the lawsuit." <u>Disability Rts. Wisconsin, Inc. v. Walworth Cty. Bd. of Supervisors</u>, 522 F.3d 796, 801 (7th Cir. 2008). . . "Associational standing is *inappropriate* if whatever injury may have been suffered is peculiar to the individual members concerned, and both the fact and extent of injury would require individualized proof." <u>Duncan Place Owners Ass'n v. Danze, Inc.</u>, 927 F.3d 970, 977 (7th Cir. 2019) (internal quotation marks omitted) (holding that condominium association could not assert damages on behalf of individual unit owners).

<u>Id</u>. at *4 (emphasis added). In the present case, the majority of the claims asserted by the plaintiff will require individualized inquiry and proof. As defendants note, "How can the Court possibly determine whether the challenged policies abridge the rights of students with disabilities to be provided appropriate accommodations without having access to particularized information as to the nature of the student's disability and the manner in which wearing a mask exacerbates it and impacts the student's ability to learn?" (Defendants' Reply Suggestions, p. 11). The Court agrees and finds that the majority of plaintiff's claims will require individualized inquiry and proof. Therefore, the Court finds that NPA cannot assert Associational Standing to prosecute the claims in the Complaint. Because the Court concludes that plaintiff has not carried its burden to show that it has Article III standing and because NPA cannot assert Associational Standing, the Court **GRANTS** Defendants' Motion to Dismiss (Doc. # 48) and dismisses Counts 4, 5,6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19 and 20.

### 8. Plaintiff's Motion to Amend

Plaintiff states that in the event the Court deems the Complaint insufficient with regard to standing, it has filed a Motion for Leave to Amend the Complaint (Doc. # 58). Plaintiff initially filed a Motion to Amend but failed to attach a proposed Amended Complaint. In plaintiff's initial Motion to Amend, plaintiff states that if the Court makes

various findings, then it would amend its Complaint to "fix" these errors. This is procedurally incorrect. Apparently recognizing this error, on November 27, 2021, plaintiff filed a Substitute Motion for Leave to File an Amended Complaint. In the Motion, plaintiff states that it seeks to add three new defendants: (1) Gary Zaborac, Director of Public Health, Clay County, Missouri; (2) Mary Jo Vernon, Director of Public of Public Health, Platte County, Missouri and (3) Frank Thompson, Interim Director, Kansas City, Missouri Health Department. Plaintiff also seeks to add two new counts: Count XXII – alleging that the defendants' mask mandates violate the Missouri Constitution because they allow no exemption for individuals based on sincerely held religious beliefs and Count XXIII – alleging that the quarantine and isolation rules are unconstitutional, unlawful and invalid. Plaintiff also seeks to amend the Complaint to challenge the recently revised mask mandates of Kansas City, Missouri and North Kansas City, Missouri which rescinded the mask mandates for everyone except K-12 students and other persons inside school buildings and on school buses. Additionally, plaintiff states that it seeks to amend the Complaint to allege that the NPA has members who have children who are English language learners, have hearing or speech impairments or otherwise have special needs. Additionally, the Amended Complaint will allege that NPA has members who have children who have been subjected to quarantine, has members who are parents of students with disabilities with IEP's or Section 504 plans and that those students either have been denied mask exemptions or have been given inadequate accommodations for the masks. With regard to Associational Standing, plaintiff seeks leave to amend the Complaint to allege that there are members of the NPA who would have standing to sue in their own right.

> Although leave to amend the complaint typically is freely given, whether to permit amendment of the complaint or addition of parties is committed to the court's discretion. Popoalii v. Corr. Med. Serv., 512 F.3d 488, 497 (8th Cir. 2008) (citing Bell v. Allstate Life Ins. Co., 160 F.3d 452, 454 (8th Cir. 1998)); see Fed. R. Civ. P. 15(a)(2). A court may deny a motion for leave to amend if there has been undue delay, bad faith, or dilatory motive by the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the nonmoving party, or futility of the amendment. Foman v. Davis, 371 U.S. 178, 182 (1962); Popoalii, 512 F.3d at 497. . . .A proposed amendment to a pleading can be denied if it could not withstand a Rule 12(b)(6) motion to dismiss. Humphreys v. Roche Biomedical Lab. Inc., 990 F.2d 1078, 1082 (8th Cir. 1993); Weimer v. Amen, 870 F.2d 1400, 1407 (8th Cir. 1989).

Danielson v. Huether, No. 4:18-CV-04039-RAL, 2019 WL 4015253, at *1 (D.S.D. Aug. 26, 2019). After reviewing plaintiff's proposed Amended Complaint, the Court finds that plaintiff's Motion to Amend the Complaint should be denied, as the proposed amendment would be futile.

As discussed above, the Court found that plaintiff's original Complaint should be dismissed because it did not meet the first and third prongs of the Associational Standing test. The proposed Amended Complaint corrects one of these problems, as plaintiff now alleges that there are members of the NPA who would have standing to sue in their own right - thus satisfying the first prong of the test. However, the Court finds that plaintiff's proposed amendment still cannot meet the third prong of the Associational Standing test, because the claims that NPA is asserting and the relief that it is requesting will still require the participation of individual members in the lawsuit. Therefore, because the proposed Amended Complaint would be futile, the Court hereby **DENIES** plaintiff's Substitute Motion for Leave to File an Amended Complaint (Doc. # 76).

### 9. Supplemental Jurisdiction

Counts 1, 2, 3 and 21 all assert claims which arise under state law (Counts 1 and 2 allege violations of Mo.Rev.Stat. §536.150.1; Count 3 alleges a violation of Mo.Rev.Stat. § 67.265 and Count 21 alleges a violation of Missouri's Religious Freedom Restoration Act. Mo.Rev.Stat. § 1.302. Because the Court dismissed the other counts of plaintiff's Complaint due to a lack of Article III standing, the Court declines to exercise supplemental jurisdiction over these state law claims pursuant to 28 U.S.C. § 1367(c)(3).

### B. <u>Motion for Preliminary Injunction</u>

As the Court has found that plaintiff has failed to establish Article III standing, the Court has no subject matter jurisdiction over the claim and need not reach plaintiff's Motion for Preliminary Injunction. Accordingly, the Court hereby **DENIES** plaintiff's Motion for Preliminary Injunction as **MOOT** (Doc. # 40).

### C. <u>Other Motions</u>

The Court hereby **GRANTS** Defendants' Motion for Leave to File Excess Pages (Doc. # 48) and **DENIES AS MOOT** the parties' Joint Motion for Extension of Deadlines (Doc. # 74).

### IV. CONCLUSION

Accordingly, for the reasons stated above, the court hereby **DENIES AS MOOT** Plaintiff's Motion for Preliminary Injunction (Doc. # 40); **GRANTS** Defendants' Motion to Dismiss (Doc. 48); **DENIES** Plaintiff's Motion to Amend Complaint (Doc. # 58); **GRANTS** Defendants' Motion for Leave to File Excess Pages (Doc. # 68); **DENIES AS**

**MOOT** the Parties' Joint Motion for Extension of Deadlines (Doc. # 74) and **DENIES** plaintiff's Substitute Motion for Leave to Amend Complaint (Doc. # 76).


Date:  November 29, 2021   **S/ FERNANDO J. GAITAN**, **JR.**
Kansas City, Missouri Fernando J. Gaitan, Jr.
United States District Judge